## AFFIDAVIT OF ROBERT ALAN JONES

Robert Alan Jones, being first duly sworn upon oath, deposes and states as follows:

1. My name is Robert Alan Jones.

2. I have been engaged in the practice of law since 1966. I am a member of the bars of Virginia, the District of Columbia, and Colorado. I am not now and have never been the subject of any disciplinary proceedings by any bar in which I am a member, nor by any court before which I have been admitted to practice.

3. I am appearing in the instant case *pro se*.

4. In July, 1998 as part of a settlement of outstanding claims and litigation between Michael Bilanzich and related entities controlled by him, on the one hand, and myself, related entities controlled by me, and several other parties on the other hand, we entered a written Settlement Agreement, and an Asset Purchase and Sales Agreement (APSA).

5. The APSA provided *inter alia* for the transfer of Bilanzich's interest in Kona Plaza Condominium #406 to myself or my nominee by Bill of Sale and Assignment.

6. From April 1997 to the present Carol Nelson has not been in possession of Condominium 406. From June 1998 to present I have been in possession of Condominium 406. For the period from June 1998 to April 1, 2002, I had complete and unfettered access to Condominium 406 including keys to the mailbox, keys to the swimming pool, keys to underground secured parking and the elevator.

7. This access continued subsequent to the inception of this lawsuit in part due to the notice of Lis Pendens filed by me in Kona, Hawaii. Some of the keys had been given to me by

///

///

2

**EXHIBIT "E"**

agents of Michael Bilanzich at the time of my first occupancy in June, 1998. Additional keys were furnished to me by the Condominium Association Management over the course of the years.

8. Carol Nelson filed a Motion to Expunge the Lis Pendens which I had filed in Kona at the inception of the instant litigation in state court. This was heard by this Honorable Court along with other Motions on April 1, 2002. That Motion was denied; however, an oral motion was submitted by Nelson's attorney requiring me to make $1,200 monthly interim payments pending the outcome of the instant litigation. I did not oppose this motion and have in fact been making $1,200 per month payments through Nelson's attorney since April 15, 2002. (see Docket # 90)

9. The status quo as of April 2, 2002 was that I was in possession of Condominium 406, that I had keys to the mailbox, the underground parking, the swimming pool, and the elevators which go from the secured parking area in the basement all the way to the fourth floor where Condominium 406 is located.

10. As was specifically known to Carol Nelson, Michael Cetraro and their lawyer Enver Painter, I had suffered a stroke on about December 11, 2001 from which I have not yet fully recovered. Both immediately before, and following this Court's April 1, ruling I personally requested additional access keys to the Kona Plaza Condominium facilities. In each of those instances my requests were politely denied by the resident manager. I was told that I would have to contact Mr. Cetraro or Ms. Nelson to solve this problem.

11. Because I possessed at least one key to each of the facilities for which my family and I needed access, I did not press the issue of refusal of management to issue additional keys to me with the Associations Board of Directors, or Nelson or Cetraro individually.

3

12. Since October, 2001 my 24 year old son Matthew who is a full-time student has been a resident at Condominium 406. Matthew Jones is an honorably discharged disabled veteran from the United States Marine Corps. He has a permanently implanted 18 inch titanium rod in his leg which is the result of a severe automobile accident. Negotiating four flights of stairs with his school materials, including his massage table is very difficult for him.

13. On about July 23 or 24, 2002 my son Matthew contacted me by telephone to tell me that the access locks for the elevator and underground parking had been changed and that his keys no longer worked in the locks. I directed him to contact Mr. Cetraro and the resident manager and politely request new keys.

14. He reported back to me that he did so, but that Cetraro and the resident manager who were both present refused to turn over keys to my son, and instead directed him to see Carol Nelson.

15. Being unable to immediately locate Ms. Nelson, Matthew contacted me. As a result I sent a letter (Exhibit 3 to the Memorandum in Support) on July 30, to Mr. Enver Painter asking that he intercede and help resolve the situation.

16. In essence Mr. Painter refused to help trying to transfer the responsibility from his clients to the Association of Apartment Owners and their counsel. (See Exhibit 4 to the Memorandum in Support: Letter of Enver Painter of July, 30 to Robert Alan Jones) The next day my office at my direction responded to Mr. Painter by letter which explained that the Association was deliberately avoiding its responsibility in this matter (See Exhibit 5 to the Memorandum in Support: Letter of Jean Hammond of July 31, to Enver Painter.)

17. I sent a demand letter to several parties including the Condominium Association on August 8. On August 9, I sent my son to the resident manager again to request keys; he was

rebuffed. On the evening of August 9, the attorney for the Association sent me a letter by facsimile directing that the problem needs to be solved by Ms. Nelson (Exhibit 6 to the Memorandum in Support).

18. On August 10, Ms. Nelson was contacted by telephone by my office. She refused to provide keys or help settle the situation. Later that day Mr. Painter was contacted personally by me to notify him that because of the combination of total lack of cooperation, illegal and endangering treatment of handicapped individuals, plus the obvious harassment instigated by his clients, litigation would be commenced as the last alternative.

19. His response was not to worry about the potential injuries to a cerebral palsy victim who falls out of a wheelchair trying to negotiate four flights of concrete steps, but rather "don't contact my client" no matter who refers you to her.

FURTHER AFFIANT SAYETH NAUGHT.

Dated this 11th day of August, 2002.

*Robert Alan Jones*
Robert Alan Jones, Affiant

STATE OF NEVADA    )
                   )ss.
COUNTY OF CLARK    )

On this 11th day of August, 2002 did personally appeared before me, a Notary Public in and for said County and State, Robert Alan Jones, and upon oath did swear that the statements made in the forgoing affidavit are true and correct to the best of his knowledge.

*Ave Welhar*
Notary Public

5