ENVER W. PAINTER, JR.  2525
Attorney at Law
1188 Bishop Street, Suite 2505
Honolulu, Hawaii 96813
Telephone: (808) 537-9777

Attorney for Plaintiff and
   Counterclaim/Defendant
   Carol J. Nelson

FILED IN THE
UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII

JUN 1 9 2007

at ___ o'clock and 35 min P M
SUE BEITIA, CLERK

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| CAROL J. NELSON, ) | Civil No. 01-00182 |
| ) | ~~06-1 EK~~-KSSC |
| Plaintiff, ) | |
| vs. ) | |
| ) | |
| ROBERT ALAN JONES ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |
| ) | |
| ROBERT ALAN JONES ) | PRETRIAL STATEMENT OF |
| ) | PLAINTIFF CAROL J. NELSON |
| Counterclaimant, ) | and CERTIFICATE OF SERVICE |
| vs. ) | |
| ) | |
| CAROL NELSON ) | |
| ) | |
| Counterclaim ) | |
| Defendant. ) | |
| _____ ) | |

## PRETRIAL STATEMENT OF PLAINTIFF CAROL J. NELSON

Plaintiff/Counterclaim Defendant, CAROL J. NELSON (Nelson) by and through her undersigned attorney, hereby submit this Pretrial Statement pursuant to Rule 16.6 of the Local Rules of the United States District Court for the District of Hawaii.

## PARTIES:

The only remaining parties to this action are Nelson and Defendant/Counterclaimant, ROBERT ALAN JONES (Jones).

## JURISDICTION AND VENUE:

This Court has jurisdiction of this case pursuant this Court's diversity jurisdiction, 28 U.S.C.A. § 1332. Venue in this Court is proper. None of the parties disputes jurisdiction or venue.

## SUBSTANCE OF ACTION:

Nelson was the registered owner of Unit 406 at the Kona Plaza condominium (Condo) located in Kailua-Kona on the big island of Hawaii. In 1997 Michael Cetraro was solicited by Michael Bilanzich in connection with acquiring a license to operate Bad Ass Coffee stores in Montana. A loose understanding was formed regarding Bilanzich's use and possible purchase of the Condo as part consideration for a license to operate the Bad Ass Coffee stores in Montana. The undescribed "interest" in the Condo was subsequently assigned to Jones by Bilanzich in 1998. Jones began making the monthly payments for the use of the Condo in June of 1998, however he fell into arrears and subsequently discontinued

making the monthly payments all together. At the time of his surrender of possession of the property to Nelson, Jones was approximate $25,000 in arrears on the monthly payments.

Because of Bilanzich and Jones's default, Nelson filed a Complaint for Summary Possession, Ejectment and Damages in the Circuit Court of the Third Circuit, State of Hawaii on February 13, 2001. Jones thereafter removing the case from the State Circuit Court to this Court. Jones filed his Answer and a Counterclaim on or about March 30, 2001. Nelson filed her their Answer to Jones's Counterclaim on April 25, 2001. On October 10, 2001, Jones filed his Second Amended Counterclaim. Nelson filed her Answer to Jones's Second Amended Counterclaim on November 15, 2001 and subsequently filed a Motion for Partial Summary Judgment and a Motion for Summary Judgment. Nelson's Motion was granted and Jones appealed.

The Ninth Circuit Court of Appeals vacated the District Court's granting of Nelson's Motion to the extent that:

     (1)    the district court concluded that the Agreement of Sale was invalid due to a failure of consideration or condition precedent and,

     (2)    the district court relied on Jones material breach of the Agreement

The case was remanded to this Court on these two issues.

## UNDISPUTED FACTS:

     1.    The subject of this lawsuit is a residential condominium unit located at 75-5719 Ali'i Drive in Kailua-Kona, Hawaii ("Condo").

2.    In April, 1997, Nelson and Cetraro entered into agreements with Bilanzich's company, Bad Ass Coffee Company USA pursuant to which Nelson agreed to allow Bilanzich to use the Condo on a month to month basis. It was also contemplated that Bilanzich could purchase the Condo if he so desired for a price of $135,000.00. A portion of the purchase price, the "down payment" as Jones characterizes it, was was to be paid by the granting of a license agreement to operate five Bad Ass Coffee Company store in Montana for a period of ten years and a $20,000 credit for the purchase of coffee for the Montana stores. The balance due for the purchase of the Condo was to be evidenced by a promissory note and secured by a mortgage

3.    Any anticipated sale of the Condo was conditioned upon the license to operate five retail coffee stores in Montana, receiving credits for coffee purchases, a written contract for the purchase of the Condo and a mortgage securing payment of the balance due after store license and coffee credits were received.

4.    Nelson signed a letter of intent regarding the anticipated future conditional sale of the Condo to Bilanzich and gave Bilanzich possession of the Condo. Jones argues that the letter of intent is an agreement of sale. A License Agreement was also entered into granting Nelson and Cetraro the right to operate five coffee stores in Montana for a period of ten years.

5.    Bilanzich assigned whatever interest he had in the Condo to Jones in 1998 and gave Jones possession of the Condo in June of 1998. Jones was in continuous

-4-

possession of the Condo from June 1998 through April of 2003 when Jones voluntarily returned possession of the Condo to Nelson.

6.     Jones began making the required monthly payments in June of 1998. Jones began defaulting on the monthly payments in December of 1998. Jones subsequently discontinued making the monthly payments all together. At the time of his surrender of the Condo to Nelson, Jones was approximate $25,000 in arrears on the monthly payments.

7.     Despite Jones's default in making the monthly payments, Nelson continued to pay the monthly mortgage payment, common area maintenance fees, taxes, and utilities because the Condo and the utility services to the Condo remained in her name.

8.     BACC USA, the entity that had given Nelson the license for the Montana coffee stores, was a wholly owned subsidiary of Royal Aloha Coffee Tea and Spice (Royal Aloha). On April 16, 1999, Royal Aloha had filed for Bankruptcy in the United States Bankruptcy Court for the District of Utah.

9.     On November 19, 1999, the attorney for the Trustee in the Royal Aloha bankruptcy case wrote Nelson and other licenses advising that the licenses had been rejected by the Trustee and that the Trustee had no obligations to them pursuant to their License Agreements.

10.     Almost immediately after the Trustee's letter rejecting the License Agreement, Nelson and Cetraro were sued by one of Bilanzich's Utah companies, Bad

Ass Coffee Company of Hawaii (BACCH), a Utah corporation. BACCH claimed that Royal Aloha had transferred the trade name, Bad Ass Coffee Company, to BACCH before the filing of the Bankruptcy and that Nelson and Cetraro could not use the trade name unless they entered into a new franchise agreement with BACCH.

11.    As a result of the cancellation of the License Agreement and the suit by BACCH regarding the use of the trade name, Cetraro was forced to close down the BACC store he had opened in Montana and was not allowed to open any additional stores as provided for by the License Agreement. Credits for coffee, which had been minimal and sporadic in the past, were completely discontinued.

12.    The BACCH suit against Cetraro and Nelson was settled on January 31, 2001 whereby Nelson and Cetraro agreed to discontinue any use of the Bad Ass Coffee Trade Name and to refrain from selling any Bad Ass Coffee Company logo items or product. As a part of the Settlement Agreement, Bilanzich and BACC agreed to disavow any interest in the Condo.

13.    Nelson subsequently brought a summary possession action in the Circuit Court of the Thirsd Circuit, State of Hawaii. Jones removed the summary possession action to this Court and filed his counterclaims against Nelson and other "counterclaim defendants" alleging among other things, various conspiracies to defraud him of his interest in the Condo, conversion of the payments he had made and other theories of liability.

14.    This Court dismissed Jones counterclaims and held that any agreement for the purchase of the Condo was unenforceable. Jones appealed, however he did not seek a stay of this Court's judgment pending his appeal and voluntarily returned possession of the Condo to Nelson. Nelson subsequently sold the Condo to an unrelated third party. On appeal, the Ninth Circuit Court of Appeals vacated and remanded to this Court for a determination of the issues as more fully set forth herein.

**DISPUTED FACTUAL ISSUES**:

Basically, all of the allegations made by Jones regarding the reason for his failure to pay for the monthly use of the Condo are denied.

**RELIEF PRAYED**:

Nelson seeks a ruling that there was no agreement for the purchase of the Condo, that if there was, the agreement was unenforceable for failure of consideration and/or conditions precedent and that Bilanzich and Jones breached material terms of agreement such that any performance required by Nelson was forgiven. Nelson has an independent action pending in the Circuit Court of the Third Circuit for the approximately $25,000 Jones owes her for his use of the Condo.

**POINTS OF LAW**:

A.    **There was no binding Agreement for the Sale.**

Any contract, to be binding, must include a demonstration of mutual assent

-7-

or a "meeting of the minds" as to all the essential terms and conditions of the contract. Benham v. World Airways, Inc., 296 F. Supp. 813 (D. Haw. 1969); Honolulu Rapid Transit v. Paschoal, 51 Haw. 19, 26-27, 449 P.2d 123, 127 (1968). Restatement (Second) of Contracts §§ 1, 3, 17 and 18 (1981); Carson v. Saito, 53 Hawaii 178, 182, 489 P.2d 636 (1971).

It cannot be disputed that there never was a "meeting of the minds" as to the essential terms and conditions of the anticipated transaction and that there never was any written agreement for the contemplated purchase and sale.

To be enforceable an agreement for the purchase and sale of real property must be in writing. The common law Statute of Frauds is codified in HRS, § 656-1 and provides that any agreement concerning an interest in land and/or any agreement that is not to be performed within one year must be in writing to be enforceable.

HRS, § 656-1 states in relevant part as follows:

No Action shall be brought and maintained in any of the following cases:

4.   Upon any contract for the sale of lands, tenements, or hereditaments, or of any interest in or concerning them;

5.   Upon any agreement that is not to be performed within one year from the making thereof; ....

unless the promise, contract, or agreement, upon which the action is brought, or some memorandum or note thereof, is in writing, and is

> signed by the party to be charged therewith, or by
> some person thereunto by the party in writing
> lawfully authorized.

Nelson executed the Letter of Intent to evidence her intention to sell to Bilanzich at some later date, believing that the final terms and conditions of the contemplated transaction would be negotiated and incorporated into a formal DROA or other contract to be executed by the parties. It is undisputed that no DROA or other contract for the sale of the Condo was ever negotiated or put into writing between Nelson and Bilanzich, the two alleged parties to the transaction.

Jones alleged interest in the Condo arises from an assignment of an oral or parol agreement allegedly made between Nelson and Bilanzich for the use and possible future purchase of the Condo. The Hawaii Supreme Court has held that:

> [t]o be enforceable a contract must be certain and definite as
> to its essential terms.... A party seeking to establish a parol
> contract to convey real property must prove its existence and
> its terms by clear and convincing evidence. (citations
> omitted)

> Boteilho v. Boteilho, 58 Haw. 40, 42, 564 P.2d 144, 146 (Hawai'i 1977).

Once an oral contract is clearly and convincingly established, the removal of said oral contract "from the operation of the Statute of Frauds" by its part performance, must also be proven by "clear and convincing evidence." Shannon v. Waterhouse, 58 Haw. 4, 7, 563 P.2d 391, 394 (Hawai'i 1977).

-9-

In addition,

> courts require the part performance to be of a character which
> is unequivocally referable to the alleged parol agreement and
> cannot admit of explanation without reference to such
> agreement....The acts constituting part performance "must
> clearly appear to have been done in pursuance of the contract,
> and to result from the contract and not from some other
> relation." (citations omitted)

Rossiter v. Rossiter, 4 Haw. App. 333, 339, 666 P.2d 617, 621 (Haw. App. 1983). See also

Lopez v. Soy Young, 9 Haw. 117 (Hawai'i 1893)

There is no formal written agreement subsequent to the Letter of Intent for the

purchase and sale of the Condo as contemplated by Nelson. Pantzer v. Shields Development

Co., 660 F. Supp. 56, 60 (D. Del. 1986) (no contract because anticipated formal agreement

subsequent to Letter of Intent was never executed by the parties).

**B.    Even if there was an agreement regarding Unit 406,
the agreement is unenforceable for failure of conditions
precedent, failure of consideration and material breach.**

Whatever the terms of the alleged Agreement of Sale are interpreted to be, it

is clear that Jones has breached the terms of the very "agreement" upon which he relies for

his alleged claim of ownership and/or right to purchase the Condo from Nelson.

In this case it cannot be disputed that any alleged agreement for the purchase

and sale of Unit 406 is completely executory. Title was never conveyed and the alleged

purchase price has never been paid.

In <u>State v. Thom</u>, 58 Haw. 8,16 (1977) the Hawaii Supreme Court cited with approval the Texas Civil Court of Appeals' opinion in <u>Rhiddlehoover v. Boren</u>, 260 S.W.2d 431, 433 (Tex. Civ. App. 1953), as follows:

> . . . a vendor under an executory contract for the sale of real property retains the "superior title," as against the purchaser and those in privity with him, until the contract is executed or performed on the part of the purchaser by paying the purchase money or discharging the debt therefor.
> (Citation omitted.)

In this case, a contract for the purchase of the Condo was never executed and the purchase price has not been paid. Nelson is therefore entitled to a declaration holding that she was the sole and rightful owner of Unit 406 and that Defendant Jones, or any other person or entity claimng through him, has no interest in Unit 406.

In <u>Bishop Trust Co. v. Kamokila Develop. Corp.</u>, 57 Haw. 330, 555 P.2d 1193 (1976), the Hawaii Supreme Court canceled an agreement for the conveyance of land for failure of consideration stating that

> Appellant's failure of performance was such as to entitle Mrs. Campbell to restitution of the property given by her in exchange for the promised performance. It is variously stated that the right of restitution exists where the non-performing party has committed a "material", or a "total" or a "vital" breach of the contract, which goes to its "essence".
> <u>Supra</u>, 57 Haw. 330, 334

**C.     Jones contention that he discontinued making the monthly payments for the use of the Condo because of Nelson's anticipatory repudiation of the alleged Agreement of Sale is not supported by the facts or law.**

-11-

Jones has argued that he did not breach the alleged agreement for the purchase of the Condo and that he only discontinued making the monthly payments for that use only after Nelson refused to convey title to him. Besides the fact that Jones contention is contradicted by the undisputed facts, Jones argument is legally without merit. Nelson had no duty to convey title to Jones pursuant to the alleged Agreement of Sale until the full purchase price had been paid. See Jenkins v. Wise, 58 Haw. 592, 596 (1978). It is undisputed that the purchase price for the Condo was never paid. The License Agreement and agreement for coffee credits which constituted the "down payment" were cancelled and Jones failed to pay the remaining balance of the alleged purchase price.

Jones appears to further argue that Nelson repudiated the alleged Agreement of Sale such that his non payment was justified. There are no facts to support this contention and even if there were, prevailing law does not justify Jones failure to pay for his ongoing use of the Condo because he never made demand for adequate assurance of Nelson's performance in the event he paid the purchase price. In Romig v. deVallance, 2 Haw. App.597 (1981), the Intermediate Court of Appeals held that under an agreement of sale of an interest in land, when reasonable ground for insecurity arises with respect to the seller's performance, the buyer, in writing, may demand adequate assurance of due performance and until he receives such assurance, may suspend, if reasonable, any performance for which he or she has not already received the agreed return. In this case there was no anticipatory repudiation by Nelson and even if there were, Jones never

-12-

demanded adequate assurance of her performance such that his failure to pay for his ongoing use of the Condo was not justified.

> **D.    The fair rental value of the Condo exceeded the amount of any payments made for his use of the Condo such that Jones has not suffered any damages.**

Jones had the sole possession and use of Nelson's Condo from June of 1998 through April of 2003 when Jones voluntarily returned possession of the Condo to Nelson following this Court's ruling that any agreement for the purchase of the Condo was unenforceable due to failure of consideration and Jones material breach of same. At common law, a defaulting purchaser could not recover from his seller any monies he had paid on the contract. In <u>Gomez v. Pagaduan</u>, 1 Haw. Ap. 70 (1980), the Intermediate Court of Appeals attempted to mitigate the harshness of the common law rule by holding that all monies paid by the purchaser could be retained by the seller if the amounts paid were not disproportionate to the sellers actual damages. In this case, Jones had the use of the Condo, however he only paid for a part of his use. Nelson's damages therefore exceeded any amounts paid by Jones for his use of the Condo and Nelson is entitled to keep all payments made to compensate her for Jones' use of her property.

Moreover, in this case Jones has retained an expert to opine as to the value of the property at various times. The relevancy of this information is questionable at best. Jones has no right to seek any appreciation in the value of the Condo. His alleged agreement for the purchase of the property was held to be unenforceable by this Court and

Jones appealed, however he did not seek a stay of the Court's Order pending his appeal and voluntarily returned possession of the Condo to Nelson. The Condo was subsequently sold to an unrelated third party. Specific performance of the alleged Agreement of Sale is no longer an available remedy and Jones has forfeited any claims he had, assuming that any such claim ever existed, for the difference between his "contract price" and the appreciation in the value of the property at any subsequent time.

**PREVIOUS MOTIONS:**

Nelson  filed the following dispositive motions:

1.    Motion for Partial Summary Judgment and for Expungement of Lis Pendens, filed  January 16, 2002.  This motion was denied as the Court believed there were issues of material fact as to whether an agreement of sale existed between the parties

2.    Motion for Summary Judgment and for Expungement of Lis Pendens, filed August 28, 2002.   In this Motion Nelson stipulated for purposes of the motion that there was an agreement of sale.  Nelson however argued that the agreement of sale was unenforcabole due to failure of conditions precedent, failure of consideration and/or for material breach by Jones. Nelson also moved for summary judgment in her favor as to each of Jones counterclaims. Nelson's Motion was  granted by order dated February 19, 2003.

3.    On January 24, 2006 Jones filed a Motion for Clarification as to Remaining Parties and Claims. The Court Ruled by Order filed on April 26, 2006 that the

remaining parties to this action were Nelson and Jones and that this matter would proceed to trial on the following issues:

>    (1)    whether the parties entered into an Agreement of Sale with respect to the Kona, Hawaii condominium;
>
>    (2)    if so, whether the Agreement of Sale is enforceable; and
>
>    (3)    who has the right to possession and ownership of the Kona, Hawaii condominium.

## WITNESSES TO BE CALLED:

>    1.    Carol J. Nelson
>         c/o Enver W. Painter, Jr.
>         Attorney at Law
>         1188 Bishop Street, Suite 2505
>         Honolulu, HI   96813

Nelson will testify as to all facts at issue herein including without limitation the original understanding of the parties regarding the anticipated sale and/or lease of the Condo to BACC USA and/or Mr. Bilanzich, the subsequent assignment of any interest in the condo by Bilanzich to Jones and conversations between the parties relating thereto, the subsequent breach and/or default regarding the consideration anticipated in exchange for the Condo and the breach and/or failure of the anticipated consideration for the anticipated conveyance of an interest in the Condo. In rebuttal to Jones allegations regarding the value of the Condo at any time relevant herein, Nelson as the owner of the Condo will testify as to her

understanding of the condition of the Condo and the value of same.  Nelson will also testify

as to the fair market rental value of the Condo at all relevant times herein.

> 2.      Michael Cetraro
>         c/o Enver W. Painter, Jr.
>         Attorney at Law
>         1188 Bishop Street, Suite 2505
>         Honolulu, HI   96813

Mr. Cetraro will testify as to all facts at issue herein including without limitation the

original understanding of the parties regarding the anticipated sale and/or lease of the Condo

to BACC USA and/or Mr. Bilanzich,  the subsequent assignment of any interest in the condo

by Bilanzich to Jones and conversations between the parties relating thereto, the subsequent

breach and/or default regarding the consideration anticipated in exchange for the Condo and

the breach and/or failure of the anticipated consideration for the anticipated conveyance of

an interest in the Condo.  In rebuttal to Jones allegations regarding the value of the Condo

at any time relevant herein, Cetraro, as a member of the AOAO for the Kona Plaza

condominium,  an owner of a unit in the Kona Plaza condominium and a person having

knowledge of the condition of the subject Condo,   will testify as to his understanding of the

condition of the Condo and the value of same. Cetraro  will also testify as to the fair market

rental value of the Condo at all relevant times herein.

> 3.      Charles M. Heaukulani, Esq.
>         Brooks Tom Porter & Quitiquit
>         75-1000 Henry Street, Suite 208
>         Kailua-Kona, HI   96740

Mr. Heaukulani will testify as to the filing of this action and his communication with Jones regarding the Condo.

4.    John Eddins III
      c/o Enver W. Painter, Jr.
      Attorney at Law
      1188 Bishop Street, Suite 2505
      Honolulu, HI   96813

Mr. Eddins will testify as to his dealing with BACC of Hawaii as a Licensee and the facts and circumstances surrounding the offer to convert license agreements to franchise agreements.

Nelson reserves the right to elicit expert opinion testimony from any of the non-expert witnesses listed above or hereafter designated by the parties to the extent that such witnesses are qualified by reason of their education, training and/or experience to render opinions regarding the issues in this case.

Nelson reserve the right to call any lay witness or witnesses named by any other party to this case.

Nelson reserves the right to call rebuttal witnesses as necessary.

Nelson reserves the right to call any witnesses listed on Jones's pretrial statement, final naming of witnesses or any other witness lists by Nelson and/or Jones as though fully named herein.

Nelson reserves the right to call any witnesses to authenticate  exhibits.

All witnesses designated through incorporation by reference in this Pretrial Statement shall remain designated as adverse witnesses whether they may be subsequently withdrawn by any other party.

Nelson reserves the right to amend her witness list any time prior to trial, or as otherwise agreed by the parties, to delete witnesses, or to designate additional witnesses as necessary. Nelson further reserves the right to call rebuttal witnesses as necessary.

## EXHIBITS, SCHEDULES AND SUMMARIES:

1.    Letter of Intent (5 pages) that was signed by Nelson and Dennis Lovell on behalf of Michael Bilanzich.

2.    Page 5 of Letter of Intent signed by Nelson and Dennis Lovell which Jones contends is an Agreement of Sale dated April 29,. 2007.

3.    License Agreement between Bad Ass Coffee Company USA and Bad Ass Coffee Company Montana.

4.    Letter dated November 19, 1999, by Adam S. Affleck, attorney for Trustee of the Royal Aloha Coffee, Tea & Spice Co., J. Kevin Bird to Bad Ass Coffee Company licensees.

5.    Letter dated November 24, 1999 by Michael Bilanzich as President of Bad Ass Coffee Company of Hawaii, Inc., to licensees.

6.    Letter dated December 21, 1999 from Dale E. Reagor to Michael Bilanzich.

7.    Letter from Jefferson W. Gross to Dale E Reagor dated January 21, 2000 with attached Complaint.

8.    Monthly Invoices for use of Unit 401, the Condo, from June 1998 through January 15, 2001

9.    Letter from Jones to Michael Cetraro and Carol Nelson dated June 3, 1998 with Check No. 1034 representing Jones first payment for use of Condo.

10.   Nelson accounting of amounts owed and payments made with balances due for use of Condo.

11.   Letter from Jones to Nelson dated January 18, 2001.

12.   Letter from Jones to Charles Heaukulani dated March 2, 2001.

13.   Letter from Leslie J. Randolph, attorney for Trustee J. Kevin Bird to Cetraro and Nelson dated April 10, 2001

14.   Amortization Schedules (2 pages) signed by Nelson and Dennis Lovell on behalf of Michael Bilanzich. These two pages were marked as Exhibit 1A to Nelson's deposition.

15.   Excerpts from Jones's deposition taken on July 2, 2002, pages 22, 27, 45, 48, 114, and 115.

Nelson and Cetraro do not limit the number of exhibits listed above and reserve the right to add any additional exhibits in the future they find necessary to support their claims in this case.

**FURTHER DISCOVERY OR MOTIONS:**

No further discovery or motions are pending or allowed.

**STIPULATIONS:**

No stipulations are anticipated at the present time. However, in order to expedite the trial of this matter, it is suggested that the parties, either voluntary or pursuant to an order of this Court, meet prior to trial and submit to the Court a stipulated statement of the facts and a statement as to which facts cannot be stipulated to and why with a list of the evidence that the parties intend to introduce in support of their position regarding any disputed facts.

**AMENDMENTS, DISMISSALS:**

No amendments or dismissals are anticipated at the present time.

**SETTLEMENT DISCUSSION:**

Nelson previously  offered to resolve all of the issues between them in consideration for which Jones would relinquish his claims to the Condo and would pay to Nelson the past-due monthly "use" payments. Jones has rejected this offer. Nelson thereafter agreed to settle this case by way of a mutual dismissal of all pending claims, Jones also rejected this offer.

Although settlement is desirable, it may not be possible in this case

**AGREED STATEMENT:**

The action or proceeding, in whole or in part, upon an agreed statement of facts is feasible and desired as set forth above.

-20-

**BIFURCATION, SEPARATE TRIAL OF ISSUES:**

A bifurcation or a separate trial of specific issues is not feasible and not desired.

**REFERENCE TO MASTER OR MAGISTRATE JUDGE:**

This matter has been referred to a magistrate judge.

**APPOINTMENT AND LIMITATION OF EXPERTS:**

An appointment by the court of an impartial expert witness is not feasible and not desired. A limitation of the number of expert witnesses, is feasible and desired.

**TRIAL:**

The trial is scheduled before the Kevin S. S. Chang on August 7, 2007.

**ESTIMATE OF TRIAL TIME:**

An estimate of the number of court days expected to be required for the presentation of plaintiff's case in chief is one day.

**CLAIMS OF PRIVILEGE OR WORK PRODUCT:**

None of the matters are claimed to be covered by the work product or other privilege.

DATED:     Honolulu, Hawaii, June 19, 2007.

ENVER W. PAINTER, JR.

Attorney for Plaintiff/Counterclaim Defendant

CAROL J. NELSON

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

CAROL J. NELSON,                     )    Civil No. 01-00182
                                     )    HG-LEK-KSSC
                    Plaintiff,       )
         vs.                         )
                                     )
ROBERT ALAN JONES                    )
                                     )
                    Defendant.       )
_____)
                                     )
ROBERT ALAN JONES                    )
                                     )
                    Counterclaimant, )
         vs.                         )
                                     )
CAROL NELSON                         )
                                     )
                    Counterclaim     )
                    Defendant.       )
_____)


## CERTIFICATE OF SERVICE

I hereby certify that on below date a true and correct copy of the Pretrial

Statement of Carol J. Nelson was duly served upon the following individuals by hand

delivery at the following address:

ROBERT E. CHAPMAN

MARY MARTIN

700 Bishop Street, Suite 2100

Honolulu, Hawaii 96813

DATED:    Honolulu, Hawaii, June 19, 2007

ENVER W. PAINTER, JR.

Attorney for Plaintiff/Counterclaim Defendant

CAROL J. NELSON

-2-