Of Counsel:
CLAY CHAPMAN CRUMPTON IWAMURA & PULICE

ROBERT E. CHAPMAN      #2679
rchapman@paclawteam.com
MARY MARTIN       #5475
mmartin@paclawteam.com
Topa Tower, Suite 2100
700 Bishop Street
Honolulu, Hawaii 96813
Telephone:  (808) 535-8400
Facsimile:  (808) 535-8444

Attorneys for Defendant
Robert Alan Jones

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| CAROL J. NELSON, | ) CIVIL NO. 01-182 KSC |
| Plaintiff, | ) |
| vs. | ) DEFENDANT'S **TRIAL MEMO**: <br> ) CERTIFICATE OF SERVICE |
| ROBERT ALAN JONES, | ) |
| Defendants, | ) |
| _____ | ) BENCH TRIAL: August 7, <br> ) 2007 |
| ROBERT ALAN JONES, | ) |
| Counterclaimant, | ) |
| vs. | ) |
| CAROL J. NELSON, MICHAEL CETRARO, | ) |
| Counterclaim Defendants. | ) |
| _____ | ) |

**DEFENDANT'S TRIAL MEMO**

COMES NOW Defendant-Counterclaimant, by and through his attorneys, Clay Chapman Crumpton Iwamura & Pulice, and submits his Trial Memo, pursuant to the Fourth Amended Rule 16 Scheduling Order, as amended.

**BASIC FACTUAL BACKGROUND**

The essence of this action is for breach of contract - an agreement of sale, that is, Plaintiff Carol Nelson ("Nelson") breached the contract by which she was obligated to consummate the sale, and transfer legal title to Defendant Robert Alan Jones ("Jones"), as to a condominium known as the Kona Plaza, Unit 406, located in Kailua-Kona, on the Big Island of Hawaii.

Plaintiff originally contracted with Michael Bilanzich to transfer the condo to him, in exchange for license agreements and trade credits for related product, plus a payoff of $70,000.00, on terms. Plaintiff Nelson, and her partner, Michael Cetraro, received the license agreements and trade credits.

Bilanzich sold and assigned his rights in the agreement of sale for title to the condominium to Defendant Jones (or his predecessors in interest), and Jones assumed not only responsibility for continuing

the monthly payments and eventual balloon as it came due, but Jones also agreed that prior to conveyance of legal title, he would pay to Nelson the $7,000.00 in delinquent payments owed by Bilanzich. Nelson ratified that assignment by, among other things, having the monthly billings sent to Jones.

When Jones attempted to tender the balloon payment, or modify the contract by suggesting that it be put on the market, Nelson refused, even though Jones had already paid the $7,000.00 delinquency owed by Bilanzich. Instead, she initiated an action entitled "Complaint for Summary Possession, Ejectment and Damages" in the Third Circuit Court (not District Court) - Defendant's Exh D26. Jones suspended his performance on the basis of Nelson's anticipatory breach, but reinstated payments after this litigation commenced, as a result of court proceedings.

After Nelson prevailed in a summary judgment proceeding, she sold the condominium, despite the pending appeal. The appeal reversed the summary judgment order, leaving Jones' remedy as monetary damages.

**POINTS OF LAW**

It does not appear that the original contract, nor the ability to assign the contract to Jones, has been questioned. The questions are believed to be as follows:

>   (1) Whether the documents signed by the parties were a legally binding agreement of sale and assignment.
>
>   (2) Whether Jones tendered performance and/or was justified at any time in withholding performance.
>
>   (3) The calculation of damages.

**DISCUSSION**

In reversing the summary judgment order, the Ninth Circuit Court of Appeals has already spoken on whether the Agreement was "conditioned" on successful completion of the Licensing Agreement.[1] The Ninth Circuit stated as follows:

>   To the extent the district court concluded that the Agreement of Sale was invalid due to a failure of consideration or condition precedent, **it erred because the Agreement does**

---

[1] The execution of the Licensing Agreement is not questioned; the Court alluded to whether the fact that the licensor eventually filed bankruptcy affected the Agreement of Sale.

>    **not clearly and unequivocally condition the sale** of the condominium on the successful completion of the Licensing Agreement.

See Memorandum Opinion, entered January 18, 2005. (Emphasis added). The Court's ruling cited a Hawaii case for the premise that if a sale is conditioned on the success of a part of the consideration, then that condition must be stated specifically. The cited case states:

>    'It is a well-settled rule of law that, if the grantor does not intend that his deed shall take effect until some condition is performed, or the happening of some future event, he should either keep it himself, or leave it with some other person as an escrow to be delivered at the proper time. That it should operate as an escrow, it is necessary that the delivery should be made to a stranger, and not to the party; for, if one makes a deed, and delivers it to the party to whom it is made, as an escrow upon certain conditions, in such case, let the form of the words be whatever it may, the delivery is absolute, and the deed shall take effect presently as his deed, and the party to whom it is delivered is not bound to perform the condition.

State, by Pai v. Thom, 58 Haw. 8, 16, 563 P.2d 982, 987-988, (1977), citing Dyer v. Skadan, 128 Mich. 348, 87 N.W. 277 (1901). Applying that to the instant case, the Ninth Circuit concluded that if the eventual

success of the Licensing Agreement(s) was a condition of the eventual transfer of legal title, then it had to be stated in the Agreement of Sale. It was not. See Defendant's Exhibit D8. The License Agreement, for five Montana locations, was duly executed. See Defendant's Exhibit D2.

Further, in Hawaii, under an agreement of sale, "the legal title to the property remains in the seller, but upon the execution and delivery of the agreement of sale, there accrues to the vendee an equitable interest in the land." Beneficial Hawaii, Inc. V. Kida, 96 Haw. 289, 314, 30 P.3d 895, 920 (2001). It takes strict foreclosure to divest the purchaser of his equitable interest in the property. Id.

In this case, Nelson sent invoices to Jones, acknowledging and accepting his equitable interest; the invoices reflected the terms of the Agreement of Sale, which included the monthly payment towards the purchase price, plus maintenance fee and utility expenses. See Defendant's Exhibits D8 and D16. Further, the Complaint which gave rise to the instant litigation (Defendant's Exhibit D26), recognizes the claim to title, by virtue of having been filed in Circuit Court,

and acknowledging Jones' claim to title, among other issues; it did not, however, seek foreclosure.

Nelson initiated that Complaint (on February 13, 2001), after Jones had twice attempted, in writing, to initiate discussions on the transfer of title. See Defendant's Exhibits D20, D21, and D26. Interestingly, the Complaint made no mention of the Agreement of Sale, but more curiously, it did not make any allegation that any funds were due. In short, it was the definitive anticipatory repudiation of a contract, and fully justified suspended performance by Jones. The issue was addressed in the Ninth Circuit opinion, as follows:

> To the extent the district court relied on Jones' material breach of the Agreement of Sale to grant summary judgment, it erred because there is a material issue of fact as to whether Jones suspended his performance until he received assurance that Nelson would perform under the contract, as is permitted under Hawaii law.

See Memorandum Opinion, entered January 18, 2005. The Opinion cited Romig v. Vallance, 2 Haw. App. 597, 637 P.2d 1147 (1981), in which the Hawaii appellate court analogized the provisions of the Uniform Commercial Code for transactions of goods, to a transaction of an agreement of sale as to real property. The relevant

statutes, applicable to the facts hereto, are H.R.S. §§490:2-609 and 2-610, which address the "Right to adequate assurance of performance," and "Anticipatory repudiation." Those statutes state as follows:

> **§490:2-609 Right to adequate assurance of performance.** (1) A contract for sale imposes an obligation on each party that the other's expectation of receiving due performance will not be impaired. When reasonable grounds for insecurity arise with respect to the performance of either party the other may in writing demand adequate assurance of due performance and until he receives such assurance may if commercially reasonable suspend any performance for which he has not already received the agreed return.
>
> (2) Between merchants the reasonableness of grounds for insecurity and the adequacy of any assurance offered shall be determined according to commercial standards.
>
> (3) Acceptance of any improper delivery or payment does not prejudice the aggrieved party's right to demand adequate assurance of future performance.
>
> (4) After receipt of a justified demand failure to provide within a reasonable time not exceeding thirty days such assurance of due performance as is adequate under the circumstances of the particular case is a repudiation of the contract.
>
> **§490:2-610 Anticipatory repudiation.** When either party repudiates the contract with respect to a performance not yet due the loss of which will substantially impair the value of the contract to the other, the aggrieved party may

> (a) For a commercially reasonable time await performance by the repudiating party; or
>
> (b) Resort to any remedy for breach (section 490:2-703 or section 490:2-711), even though he has notified the repudiating party that he would await the latter's performance and has urged retraction; and
>
> (c) In either case suspend his own performance or proceed in accordance with the provisions of this Article on the seller's right to identify goods to the contract notwithstanding breach or to salvage unfinished goods (section 490:2-704).

In this case, on the same date that Nelson filed her Complaint in the Third Circuit Court, Jones was writing again, and did one more time, before he was served with the Complaint.  See Defendant's Exhibits D22 and D23.  He continued to seek a status quo after being served (Exhibit D24), but to no avail.

Therefore, the issue here is the application of the facts to the law concerning anticipatory repudiation and the right to adequate assurance of performance.

The resulting damages available for Nelson's breach of the contract include seeking the damages occasioned by the breach.  17A Am Jur 2d Contracts §725.  Those damages include an accounting of the benefits that Jones would have received by full

performance.  Id. at §726.  In this case, since the condominium has been sold, those benefits include the profit made on the condominium, including in the calculation the price at which Jones was to purchase the condominium, less the amount still due, plus interest since the date of sale.

   DATED:  Honolulu, Hawaii, July 27, 2007.


            __/s/ Mary Martin_____
            ROBERT E. CHAPMAN
            MARY MARTIN
            Attorneys for Defendant

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| CAROL J. NELSON, | ) CIVIL NO. 01-0182 KSC |
| Plaintiff, | ) |
| vs. | ) CERTIFICATE OF SERVICE |
| ROBERT ALAN JONES, | ) |
| Defendants, | ) |
| ROBERT ALAN JONES, | ) |
| Counterclaimant, | ) |
| vs. | ) |
| CAROL J. NELSON, MICHAEL CETRARO, | ) |
| Counterclaim Defendants. | ) |

**CERTIFICATE OF SERVICE**

It is hereby certified that on the dates and by the methods of service noted below, a true and correct copy of the foregoing document was duly served on the following parties at their last known addresses:

Served electronically through CM/ECF: July 27, 2007.

      Enver.painter@hawaiiantel.net
      ENVER W. PAINTER, Jr., Esq.


DATED:  Honolulu, Hawaii, July 27, 2007

                   /s/ Mary Martin
                ROBERT E. CHAPMAN
                MARY MARTIN
                Attorneys for
                Defendant/Counterclaimant
                ROBERT ALAN JONES

303033.1