SNELL & WILMER

Blanzich / Jones

## JONES, WALDO, HOLBROOK & McDONOUGH
A PROFESSIONAL CORPORATION
ATTORNEYS AND COUNSELORS
1500 WELLS FARGO PLAZA
170 SOUTH MAIN STREET
SALT LAKE CITY, UTAH 84101-1644
TELEPHONE (801) 521-3200
FAX (801) 328-0537
www.joneswaldo.com

WASHINGTON, D.C. OFFICE
411 CONSTITUTION AVE., N.E.
WASHINGTON, D.C. 20002
TELEPHONE (202) 347-7711
FAX (202) 347-5717

ST. GEORGE OFFICE
THE TABERNACLE TOWER BLDG.
SUITE 200
249 EAST TABERNACLE
ST. GEORGE, UTAH 84770-2076
TELEPHONE (435) 339-1527
FAX (435) 628-5265

RECEIVED NOV 22 1999

IN REPLY REFER TO:

Salt Lake City

November 19, 1999

Ms. Serena Meyer
The Bad Ass Coffee and Macnut Company
At Tex's Drive Inn, Honoka'a, HI
PO Box 893
Honoka'a, HI 96727

Ms. Nancy Dennis
The Bad Ass Coffee Company
At Aloha Stadium, Honolulu, HI
PO Box 8107
Honolulu, HI 96815

John & Lucinda Eddins
The Bad Ass Coffee Company
PO Box 1098
Kohei, Maui, HI 96753

Kevin & Karen Pugh
The Bad Ass Coffee Company
75-5770 Alii Drive
Kailua-Kona, HI 96740

Marlin & Vicki Kelly
The Bad Ass Coffee Company
703 West Northern Lights
Anchorage, AK 99503

Marlin & Vicki Kelly
The Bad Ass Coffee Company
11400 Old Seward Hiway
Anchorage, AK 99503

Mr. Charlie Parker
The Bad Ass Coffee Company
c/o Club Bar
201 North Harbor Drive
Valdez, AK 99686

John & Lucinda Eddins
The Bad Ass Coffee Company
PO Box 927
Lahaina, Maui, HI 96761

Kini Ziegner & Anna Murray, SFI, Inc.
The Bad Ass Coffee Company
1 Aloha Tower Market Place #1119
Honolulu, HI 96813

Mr. Mike Cetraro
The Bad Ass Coffee Company
52 North Main
Helena, MT 59601

Dear Licensee:

As you are aware, on April 16, 1999, Royal Aloha Coffee, Tea & Spice Co. ("Royal Aloha") filed a voluntary petition commencing a chapter 7 bankruptcy case in the United States Bankruptcy Court for the District of Utah. Shortly after the case was commenced, I, Kevin Bird

412990v1

CORRESPONDENT LAW FIRM; GOURLEY & BODILY, P.C., LAS VEGAS, NV
A REFERRAL RELATIONSHIP ONLY; THE FIRMS ARE NOT IN A PARTNERSHIP, A JOINT VENTURE,
AN OF COU
SE ASSOCIATED

P's Exhibit 4

November 19, 1999
Page 2

was appointed as the trustee. I have been hired by Mr. Bird, with the Court's approval, to act as his counsel for certain matters in the case. Mr. Bird has requested that I correspond with you and other licensees to clarify his position concerning recurring questions that you or other licensees have communicated to him and me.

*Rejection of Executory Contracts*

The Bankruptcy Code allows a trustee to assume or reject contracts in which performance on both sides is executory (or incomplete) on the day of the bankruptcy filing. Trademark license agreements and franchise agreements are generally included within the category of executory contracts which the trustee may assume or reject. On one side of such agreements is the licensee who generally has a continuing obligation to abide by restrictions concerning the offering of products identified by the trademark and to pay royalties. On the other side, the licensor is generally required to take affirmative steps to protect the trademark and, to that end, provide approved products or approved sources for products. Where, as in this case, Royal Aloha was the licensor under such an agreement, assumption would obligate Mr. Bird to perform by protecting the trademark and providing product or approving product sources. Rejection, on the other hand, would relieve him of the obligation to perform any continuing contractual duties. For licensees, assumption would have no significant impact. Rejection, on the other hand, is generally held by courts to result in a termination of continued rights under license or franchise agreements. The damages suffered by licensees by rejection are treated as unsecured claims in the bankruptcy case.

To the extent that, on the date of the bankruptcy filing, Royal Aloha had executory obligations to you under a license agreement, such obligations are no longer binding on Mr. Bird through rejection. Specifically, Mr. Bird elected not to assume any executory license agreements, and rejection occurred by operation of law 60 days after the case was filed. Mr. Bird did not assume because when Royal Aloha filed bankruptcy, the estate had no ability to perform, and assumption would not have preserved or enhanced the value of any assets of the estate. Royal Aloha's schedules indicated that the Bad Ass Coffee trademark had been transferred in November 1997 to Bad Ass Coffee Co. of Hawaii ("BACH"), and that it had zero product inventory to service licensees. Moreover, it was understood that BACH, or its designee, had supplied you and others with approved product both before and after the filing--which is supported, in part, by the fact that for the first four months of 1999, Royal Aloha had only $716.00 of gross revenue. It has since been learned that Mr. Bilanzich claims to have foreclosed on Royal's Aloha's distribution rights under all license agreements sometime in 1998.

November 19, 1999
Page 3

*Continued Rights of Licensees to Sell Bad Ass Coffee Products*

Several licensees have inquired of Mr. Bird or me concerning their continued right to sell products using the Bad Ass Coffee trademark. Other than reiterating Mr. Bird's position that Royal Aloha's obligations under the license agreements have been rejected, we are not in a situated to provide a further position on the matter. As previously mentioned, upon the bankruptcy filing, BACH, not Royal Aloha, owned the trademark, and BACH, or its designee, had been servicing you and others before and after the filing. You should seek the advice of your own independent counsel to determine how your rights under your own particular license agreement have been affected by what has transpired.

*The Trustee's Plans Concerning the Trademark*

To fulfill his duties to the estate, Mr. Bird and I are currently investigating whether certain transfers made by Royal Aloha prior to its bankruptcy filing are avoidable and recoverable. Included among the transfers that we are investigating is the transfer of the Bad Ass Coffee trademark to BACH which we understand to have been purchased by BACH for a cash price of $30,000 plus release of liability and indemnification from two pending suits involving the trademark which were later settled by BACH for a total of $31,000. The avoidance theory under which the investigation is taking place is that of fraudulent transfer. You should not, however, based on the use of the word "fraudulent" assume that BACH or Mr. Bilanzich have committed or are being investigated for bankruptcy fraud or bankruptcy crimes. "Fraudulent" transfers include transfers made in good faith but which are nevertheless constructively fraudulent to creditors based on facts showing the debtor was insolvent at the time of the transfer and received less than reasonably equivalent value in exchange for the transfer. Mr. Bilanzich and BACH are cooperating with us in this investigation and have supplied information supporting their contention that fair value was given for the transfer. Nevertheless, Mr. Bird and I intend to continue to investigate this matter fully before making a final determination on whether to formally assert such a claim through commencement of a lawsuit.

If an action to avoid the trademark transfer is commenced and if Mr. Bird is successful in such a suit, Mr. Bird would be entitled to the trademark itself or, if the Court so orders, the value of the trademark at the time of the transfer—subject, however, to certain lien rights of good faith transferees. This letter puts you on notice of the potential voidability of Royal Aloha's transfer of the trademark. However, you should understand that until such time an action is commenced and the Court makes an order regarding avoidability, BACH remains the legal owner.

November 19, 1999
Page 4

The period of time for a trustee to commence actions to avoid pre-petition transfers of property is two years from the date of the bankruptcy filing. However, it is Mr. Bird's intent, given the availability of sufficient information, to make a decision on whether to commence an avoidance action concerning the trademark within the next 60 days.

Mr. Bird and I regret that we cannot bring better certainty to the matters discussed herein. However, we hope that this letter, at least, clarifies Mr. Bird's position on several important matters. Please understand, however, that this letter is not intended as a definitive statement concerning your rights which you should determine by consulting your own legal counsel.

Sincerely,

Adam S. Affleck

cc: J. Kevin Bird
David Leta
Jeffrey Thompson
Alan Jones
Enver Painter
Dennis Lovell
Dana Pankey

41999v1

BAD ASS COFFEE COMPANY OF HAWAII, INC.
155 West Malvern Ave.
Salt Lake City, Utah 84115
801-463-6577   FAX 801-463-7741

## FAX TRANSMISSION SHEET

DATE 11/24/99
TIME 9:20 AM

TO:   Jeff Gross / Burbidge & Mitchell

FAX NO.:  355-2341

Total # of Pages 5

COMMENTS:   Trustees letter


Thanks    Michael