# LUXAN & MURFITT
**PROFESSIONAL LIMITED LIABILITY PARTNERSHIP**
ATTORNEYS AT LAW
MONTANA CLUB BUILDING • 24 W. SIXTH AVE.
P.O. BOX 1144 • HELENA, MONTANA 59624
(406) 442-7450
TELECOPIER (406) 442-7361

207 BROADWAY • P.O. BOX 1289
TOWNSEND, MONTANA 59644
(406) 266-4032
TELECOPIER (406) 266-4034

PLEASE REPLY TO HELENA OFFICE

GARY L. DAVIS
DALE E. REAGOR
PATRICK E. MELBY
KRISTI BLAZER
MICHAEL J. MULRONEY
PATRICK F. HOOKS
CANDACE C. TORGERSON PAYNE
GREGORY G. GOULD
JAMES B. LIPPERT
BENJAMIN W. REED

WALTER S. MURFITT OF COUNSEL
H.J. LUXAN (1918-1984)

December 21, 1999

Michael Bilanzich, President
The Bad Ass Coffee Co. Of Hawaii, Inc.
155 West Malvern Avenue
Salt Lake City, UT 84115

     RE:    Response to your letter of November 24, 1999

Dear Mr. Bilanzich:

     Our firm represents Michael Cetraro, holder of a license agreement for the sale of Bad Ass Coffee Company Products in Montana. We received your letter of November 24, 1999, asserting that his license has been terminated by the action of the bankruptcy trustee. On behalf of our client, we reject your attempt to terminate his rights under the licensing agreement.

     We are of the legal opinion that when the Bad Ass Coffee Company trademark rights were transferred to Bad Ass Coffee Company of Hawaii, the licenses associated with the trademarks were transferred as well. Your company purchased the trademark rights subject to the existing licenses, and assumed all contract obligations of the licensor. You cannot terminate our client's contract rights through the simple device of transferring trademarks to a new company, and bankrupting the previous licensor.

     Permit me to provide citation to legal authority for the benefit of your legal counsel. In a 1921 patent case, the 2nd Circuit stated in *Keystone Type Foundary v. Fastpress Co.*, 272 F. 242 (2nd Cir. 1921), that: "[w]hen defendant took its assignment, it has long passed into the text-books that such an assignee acquired title subject to prior licenses of which the assignee must inform himself as best he can, and at his own risk." Citing, Rob. Pat. §817; Walker (5th Ed.) §§ 303, 304. *Keystone,* 272 F. at 245. More recently in *Sanofi, S.A. and American Home Products Corp. v. Med-Tech Veterinarian Products, Inc.*, 565 F. Supp. 931 (Dist. N.J. 1983), the court cited to *Keystone* with favor, *Sanofi,* 565 F. Supp. at 939. The court also cited to Walker on Patents § 401 (2d ed.): "No license is required to be recorded, and no record of a license affects the rights of any person; for a license is good against the world, whether it is recorded or not. A purchaser of a patent takes it subject to all outstanding licenses." *Sanofi,* 565 F. Supp. at 940.

P's Exhibit 6

Michael Bilanzich
December 21, 1999
Page 2

The same concept was applied in a trademark case, *J.C. Hall Company v. Hallmark Cards, Inc.*, 340 F.2d 960 (C.C.P.A. 1965). The *Hallmark Cards* court stated: "That the assignee of a registration stands in the place of the registrant in all respects is also clear from section 45 of the Lanham Act which provides that "The terms 'applicant' and 'registrant' embrace the legal representatives and successors and assigns of such applicant or registrant." *J.C. Hall*, 340 F.2d at 984.

My client will continue to exercise his rights under the license agreement, to include the purchase of merchandise from other sources when it is not available from your company. In addition, my client has been damaged by your company's refusal to provide him with products, failure to honor negotiated credits, and interference with his license rights. We intend to hold your company liable for all consequent damages.

Sincerely,

DALE E. REAGOR

for LUXAN & MURFITT, PLLP

DER/kp
cc:    Michael Cetraro
        C. Jeffrey Thompson, Attorney at Law