

# BAD ASS COFFEE COMPANY OF HAWAII, INC.

# FRANCHISE OFFERING CIRCULAR

# FOR

# HAWAII

P's Exhibit 16



# FRANCHISE OFFERING CIRCULAR

**BAD ASS COFFEE COMPANY OF HAWAII, INC.**
a Utah corporation

155 West Malvern Avenue
Salt Lake City, Utah 84115
(801) 463-1966

## INFORMATION FOR PROSPECTIVE FRANCHISEES REQUIRED BY THE FEDERAL TRADE COMMISSION

To protect you, we've required your Franchisor to give this information. <u>We haven't checked it, and don't know if it's correct</u>. It should help you make up your mind. Study it carefully. While it includes some information about your contract, don't rely on it alone to understand your contract. Read all of your contract carefully. Buying a franchise is a complicated investment. Take your time to decide. If possible, show your contract and this information to an advisor, such as a lawyer or an accountant. If you find anything you think may be wrong or anything important that's been left out, you should let us know about it. It may be against the law.

There may also be laws on franchising in your state. Ask your state agencies about them.

**FEDERAL TRADE COMMISSION
WASHINGTON D.C. 20580**

Hawaii 4/5/2000

## ITEM 2

## BUSINESS EXPERIENCE

The following persons will have management responsibility for the franchises offered by this Offering Circular:

<u>MICHAEL BILANZICH, Director, President and Chief Operations Officer</u>

Since 1974, Mr. Bilanzich has been President and Chief Operations Officer of Hairware U.S.A., Inc., a manufacturer and worldwide wholesale distributor of hair goods, located in Salt Lake City, Utah. In 1995, Mr. Bilanzich also became President of Royal Aloha, Coffee, Tea & Spice Company, Inc., our predecessor. He continues to serve in that capacity today. Also, in November 1997 and December 1997, Mr. Bilanzich was appointed President of both BACH and BACD, respectively, and continues to serve as president of both companies as well.

<u>HAROLD HILL, Director, Secretary and Treasurer</u>

Harold Hill has been employed as our corporate secretary and treasurer since November 1997. Since 1975, Mr. Hill has served as President of the Epicurious Group, Inc., a Utah corporation, specializing in restaurant management. In addition, from March 1990 to the present, he has been vice president of American Grill, Inc., a Utah based restaurant company; from August 1990 to the present, president of H.J.M., Inc., a Utah based business consulting firm; and from December 1992 to the present, he has served as the treasurer of HM Investment Corporation, a Utah real estate leasing and consulting firm.

## ITEM 3

## LITIGATION

Our predecessor, Royal Aloha, was counter-sued in the matter of <u>Royal Aloha Coffee, Tea & Spice Company, Inc. v. Philip T. Montoya, et al.</u> filed in the Circuit Court of the Second Circuit, State of Hawaii, Case No. 95-0787(3), for unspecified damages and recission arising out of an alleged violation of the franchise disclosure laws of the State of Hawaii. R.A. originally sued Mr. Montoya for breach of contract. This case was referred to arbitration. Mr. Montoya obtained an award of $130,000 against Royal Aloha, which was trebled pursuant to Hawaii law.

In addition, R.A. voluntarily entered into a Consent Agreement with the State of Hawaii in October 1998 for having previously offered and sold franchises in the state without prior registration. R.A. paid a $5,000 fine and is required to offer recission to certain licensees in Hawaii. The Consent Agreement is with the Hawaii Department of Commerce and Consumer Affairs (Case No. SEU-95-144).

On March 9, 1999, we filed suit in the United States District Court for the District of Utah, Civil No. 2:99 CV 0150G against Bad Ass Coffee Limited Partnership and Robert Alan Jones, who were acting as our Area Developer in Hawaii, entitled <u>Bad Ass Coffee Company of Hawaii, Inc. v.</u>

<u>Bad Ass Coffee Limited Partnership and Robert Alan Jones.</u>  We sued for breach of contract and other matters and sought to terminate Bad Ass Coffee L.P.'s rights under the Master Distribution Agreement and Territory Development Agreement for Hawaii. The decision on whether we could properly terminate the agreements was referred to arbitration. On September 3, 1999, we obtained an arbitration award against Bad Ass Coffee Limited Partnership ("Bad Ass Coffee L:P.") determining that our termination of the Master Distribution Agreement for the state of Hawaii with Bad Ass Coffee L.P. was proper and justified. On September 13, 1999, the Company made a written demand on Bad Ass Coffee L.P. to cease and to desist any and all use of the Bad Ass Coffee Company trademarks in the state of Hawaii. The arbitration award was later confirmed by the U.S. District Court for the District of Utah. Injunctive relief was also granted ordering that Mr. Jones and BACLP cease using the Bad Ass Coffee Co.® trademarks and to stop selling Bad Ass Coffee Co.® products. Due to the termination of the Mater Distribution Agreement and our termination of the Territory Development Agreement in Hawaii, as well as by virtue of the preliminary injunction that the court imposed on Mr. Jones and Bad Ass Coffee L.P., we believe that Jones and Bad Ass Coffee L.P. no longer have any legal rights with respect to the sale, development and distribution of Bad Ass Coffee Co. products or franchises in the state of Hawaii and/or to the Bad Ass Coffee Company trademarks in Hawaii.

Bad Ass Coffee L.P. and Mr. Jones counterclaimed against us and filed a third party complaint against Michael Bilanzich alleging a host of claims including, among others, fraud, violations of the Hawaii securities act, violations of Hawaii franchise laws, defamation and tortious interference with existing and prospective economic relations. Bad Ass Coffee L.P. and Mr. Jones seek in excess of $3.5 Million in damages plus unspecified punitive damages. We consider these claims to be specious and will vigorously defend against them. The civil case is still pending, but the arbitration award that we received will now effect the scope of Bad Ass Coffee L.P.'s and Mr. Jones' claims.

<u>BACC of Laihaina, Inc., et al. v. Bad Ass Coffee of Hawaii, Inc., et al.</u>, (First Circuit Court for the State of Hawaii, Case No. 00-1-0326-01). John Eddins, corporate entities associated with Mr. Eddins, SFI, Inc. and Michael Cetraro have filed an action against the Company, its subsidiary, Bad Ass Coffee Distributors, Inc., and some of the employees of the Company. In this action, the plaintiffs seek a judicial declaration that they are entitled to use our Trademark and have made claims of fraud and intentional interference with economic relations. The Company has removed the action to federal court in Hawaii. Management intends to defend the action vigorously. We have recently learned that SFI, Inc. wishes to discontinue pursuit of its claims.[1]

<u>Lovell, et al. v. Bad Ass Coffee Company of Hawaii, Inc., et al.</u>, (First Circuit Court for the State of Hawaii, Case No. 00-1-047-03). Mr. Lovell, a former officer of R.A., and a closely associated entity have filed an action against BACH and Mr. Bilanzich and others. The plaintiffs

---

[1]    The Company also initiated a separate action against SFI, Inc., and its principal, Ana Murray, (<u>Bad Ass Coffee Company of Hawaii, Inc. v. SFI, Inc., et al.</u>, Case No. 2:00 CV 0143ST, in the United States District Court of Utah. Due to SFI, Inc.'s intent to discontinue using the Trademark, we do not believe that this action is material.

Hawaii 4/5/2000                                            - 4 -

claim, <u>inter alia</u>, to have a right to use our Trademark and allege that the Company defrauded the plaintiffs by filing an allegedly forged UCC-1 financing statement with the State of Hawaii. The Company intends to remove the action to federal court in Hawaii but has not yet filed a responsive pleading. Management intends to defend the action vigorously.

Other than the above lawsuits and administrative order, neither BACH nor our predecessor or affiliate, nor any person identified in Item 2 of the Offering Circular:

1) Has any pending administrative, criminal or material civil or arbitration proceedings (or a significant number of civil actions irrespective of materiality) alleging a violation of any franchise law, securities law, fraud, embezzlement, fraudulent conversion, restraint of trade, unfair or deceptive practices, misappropriation of property or comparable allegations; nor have they had any such proceedings during the preceding 10 year period.

2) Has been convicted of a felony or pleaded *nolo contendere* to a felony charge or, within the 10-year period immediately preceding the application for registration, has been convicted of a misdemeanor or pleaded *nolo contendere* to a misdemeanor charge or been held liable in a civil action by final judgment or been the subject of a material complaint or other legal proceeding if such misdemeanor conviction or charge or civil action, complaint or other legal proceeding involved violation of any franchise law, securities law, fraud, embezzlement, fraudulent conversion, restraint of trade, unfair or deceptive practices, misappropriation of property or comparable allegations.

3) Is subject to any injunctive or restrictive order or decree relating to franchises or under any Federal, State or Canadian franchise, securities, antitrust, trade regulation or trade practice law as a result of a concluded or pending action or proceeding brought by a public agency.

## ITEM 4

## BANKRUPTCY

On April 16, 1999, our predecessor, R.A., filed for bankruptcy protection under Chapter 7 of the U.S. Bankruptcy Code in the matter entitled: <u>In Re Royal Aloha Coffee, Tea & Spice Co., Inc. dba Bad Ass Coffee Company, Bad Ass Coffee U.S.A., Bad Ass U.S.A., Kool Kow, Inc. and Hamakua Business Development, Inc.</u>, (Case No. 99-24191 JHA) in the U.S. Bankruptcy Court for the district of Utah. Mr. Bilanzich served as president of R.A. at the time the bankruptcy petition was filed. There is a possibility that the bankruptcy Trustee could claim rights in and to the Bad Ass Coffee Co. trademarks, though no formal or written claim has been made at this time. Should the Trustee assert and prevail on such a claim (which we believe to be highly unlikely), we may not have the right to continue using the trademarks. The case is still pending.

Other than this action, no person previously identified in Items I or II of this Offering Circular has been involved as a debtor in proceedings under the U.S. Bankruptcy Code required to be disclosed in this Item.

## ITEM 5

## INITIAL FRANCHISE FEE

All Franchisees pay an initial lump sum franchise fee of $20,000 when they sign the Franchise Agreement. In addition, you will be required to purchase your initial inventory of The Bad Ass Coffee Co.® Coffee and related goods and supplies from us or other suppliers for a cost between $20,000 to $30,000. The range in cost depends upon the size and location of your store, as well as estimated initial business volume. Except as noted above, these costs and fees are uniform for all Franchisees and are not refundable.

## ITEM 6

## OTHER FEES

| NAME OF FEE | AMOUNT | DUE DATE | REMARKS |
|---|---|---|---|
| Royalty[1,2] | 6 percent of gross weekly sales | Payable weekly by Friday of the following week (sales week runs Monday through Sunday) | Gross sales include all revenue from the franchise location, but exclude sales tax. |
| Advertising Fee[1,2] | 2 percent of gross weekly sales | Payable weekly by Friday of the following week (sales week runs Monday through Sunday) | The advertising fee may be used by us for national or regional advertising, as we choose. If a local advertising co-op is formed, any advertising expenditures you make locally up to 1% of gross weekly sales is credited against your obligation to the national or regional advertising fund. |
| Training[2,3] | No fee | Not Applicable | You must pay your own travel, lodging and food expenses while attending training - See Item 11 |
| Opening Assistance | N/A | Not Applicable | N/A |

Hawaii 4/5/2000

— 6 —

| NAME OF FEE | AMOUNT | DUE DATE | REMARKS |
|---|---|---|---|
| Additional On-Site Assistance[2,3] | $350 per day plus travel / lodging expenses | In Advance | We provide on-site consulting assistance at your reasonable request - See Item 11 |
| Other Assistance | No fee | Not Applicable | By telephone as reasonably required |
| Transfer[1,2] | $2500 | At time of approved transfer | Payable when you sell your franchise. No charge if franchise transferred to a corporation which you control |
| Late Charges | $5.00 per day up to $100 plus 18% interest | Payable with royalty or report or demand | Charges and interest accrue after the due date of any royalty, fee or other required payment |
| Renewal Fee[1,2] | $2500 | At time of renewal | Payable when you elect to renew your franchise |
| Fees on Default and Indemnity | Attorney's fees, costs, interest and audit costs. | On demand, as incurred. | Paid in addition to other payments to us. |
| Audit Charge | Cost of audit. | On billing. | If understatement of 2% or more of Gross Weekly Sales or records are unavailable. |
| Testing Fee | $500 | In advance of testing | Payable if you want to have unapproved suppliers or products tested for our approval |

NOTE 1.   Except as shown in the remarks column, all fees are imposed and payable to us; however, such fees will be shared between us. All fees are non-refundable.

NOTE 2.   You agree to indemnify us from any and all claims or damages in connection with your conduct, your operation of The Bad Ass Coffee Co.® franchise, sales of food products or beverage items or omissions.

NOTE 3.   We also provide on-site assistance at your reasonable request for $350 per day plus the cost of travel, food and lodging for our representative.