ORIGINAL

ENVER W. PAINTER, JR.  2525
Attorney at Law
1188 Bishop Street, Suite 2505
Honolulu, Hawaii 96813
Telephone: (808) 537-9777

FILED IN THE
UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII
JUL 27 2007
at ___ o'clock and ___ min. ___ M.
SUE BEITIA, CLERK

Attorney for Plaintiff and
  Counterclaim/Defendant
  Carol J. Nelson

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| CAROL J. NELSON, | CV 01-00182 KSC |
| Plaintiff, | |
| vs. | |
| ROBERT ALAN JONES | |
| Defendant. | PLAINTIFF'S TRIAL BRIEF and CERTIFICATE OF SERVICE |
| ROBERT ALAN JONES | |
| Counterclaimant, | Bench Trial |
| vs. | August 7, 2007 |
| CAROL NELSON | Magistrate Judge Kevin S. S. Chang |
| Counterclaim Defendant. | |

**PLAINTIFF'S TRIAL BRIEF**

Plaintiff, CAROL J. NELSON (Nelson) by and through her undersigned attorney, hereby submit this Trial Brief pursuant to the Court's Forth Amended Rule 16 Scheduling Order filed on January 5, 2007.

## I.   ISSUES BEFORE THE COURT ON REMAND:

In this case, Plaintiff Nelson previously moved for and was granted summary judgment as to Count I ("Summary Possession") and Count II ("Declaratory Relief") of the Complaint and as to each of Jones Second Amended Counterclaims.  Jones appealed and the Ninth Circuit Court of Appeals vacated the District Court's granting of Nelson's motion for summary judgment to the extent that:

(1)   the district court concluded that the Agreement of Sale was invalid due to a failure of consideration or condition precedent and,

(2)   the district court relied on Jones material breach of the Agreement

The case was remanded to this Court on these two issues.[1]

On January 24, 2006, Defendant Alan Jones (Jones) filed a Motion for Clarification as to Remaining Parties and Claims.  Judge Gillmor heard the Motion and ruled that only Count I and II of the Complaint and, by implication, Counts II (Breach of Contract), Count III (Breach of Contract for Specific Performance) and Count V

---

[1]   For purposes of her Motion for Summary Judgment only, Nelson agreed with Jones characterization of the Letter of Intent as an Agreement of Sale so as to remove any issue of material fact regarding whether there was an Agreement of Sale. That issue as to whether the parties entered into an Agreement of Sale is again before the Court on remand. See footnote 2

(Declaratory Relief) of Jones Second Amended Counterclaim were reinstated. Judge Gillmor further ruled that all other claims made were not at issue and that this matter would proceed to trial between Nelson and Jones on the following issues:

    (1)    whether the parties entered into an Agreement of Sale with respect to the Kona, Hawaii condominium;

    (2)    if so, whether the Agreement of Sale is enforceable; and

    (3)    who has the right to possession and ownership of the Kona, Hawaii condominium.[2]

## II.   DISCUSSION OF THE ISSUES PRESENTED:

### A.   THERE WAS NO "AGREEMENT OF SALE"

The facts regarding the discussion between Mike Cetraro, Carol Nelson and Dennis Lovell acting on behalf of Mike Bilanzich and/or Royal Aloha Coffee Tea and Spice (Royal Aloha) and/or Bad Ass Coffee Company USA (BACC USA) regarding the negotiations and alleged "agreement" for the purchase of the subject property are as follow, and are for the most part, undisputed.

While visiting on the big island of Hawaii in February or March of 1997, Michael Cetraro ("Cetraro") stopped into a coffee shop called Bad Ass Coffee Company in Kailua-Kona. In that shop, Cetraro had a conversation with an individual by the name of Dennis Lovell ("Lovell") regarding Cetraro operating Bad Ass Coffee Company stores

---

[2]   See Order Clarifying Remaining Parties and Claims filed April 26, 2006.

in the state of Montana. Cetraro had further discussion with Lovell and with Mike Bilanzich (Bilanzich) who lived in Utah and who Cetraro understood to be the principal of a company in Utah which owned the Bad Ass Coffee Company trade name.

During these discussions Bilanzich learned that Nelson owned Unit No. 406 in the Kona Plaza condominium in Kailua-Kona (Condo). Bilanzich stated that he was in immediate need of a condo in Kona to house employees and might be interested in purchasing Nelson's property but that he did not want to wait until he actually purchased the Condo to have the use of it because he needed it right away. He stated that he would be willing to give credits for licensing fees for the use of the trade name as part consideration for any future purchase of the Condo. Nelson agreed to allow him to use the Condo in the interim period so long as he paid all of the costs associated with the Condo. These costs included the monthly anticipated mortgage payment, association fees for common area maintenance, utilities, taxes, and the like.

These discussions resulted in the signing of a License Agreement on April 23, 1997. The parties to the License Agreement were BACC USA as licensor and a Nelson and Cetraro partnership, BACC of Montana, as licensees. The License Agreement gave BACC of Montana the right to use the trade name, Bad Ass Coffee Company at five to be determined locations in Montana for a period of ten years.

Although the License Agreement did not mention the Condo, Nelson understood that any future purchase of the Condo was conditioned upon the right to

operate five (5) Bad Ass Coffee Company retail stores in Montana for a period of 10 years, the negotiation and receipt of credits for the purchase of coffee and or other logo products, the negotiation and signing of a Deposit Receipt Offer and Acceptance real estate contract ("DROA") or other form of a contract for the purchase of the Condo and agreement as to the payment of the balance of the purchase price which was to be evidenced by a promissory note and secured by a second mortgage. Moreover, Nelson understood that if Bilanzich was going to purchase the Condo, the transaction would be consummated by the time the balloon payment on the existing mortgage became due in November of 1999

So that everyone understood what was contemplated, Cetraro drafted what he has always referred to as a Letter of Intent setting forth various scenarios for the purchase of the Condo consisting of different combinations of license and coffee credits and cash based upon future hypothetical events. Nelson and Lovell for "M. B." signed page 5 of the Letter of Intent on April 29, 1997. They also signed two amortization schedules regarding two possible payment methods of the sum of $70,000.

Nelson understood that Cetraro and Bilanzich would negotiate and draft a formal written contract for the purchase and sale of the Condo. However, no writing or contract was ever negotiated, drafted or executed by Nelson and Bilanzich for the purchase and sale of the Condo. Nelson continued to pay the utilities, association fees, real property taxes and other expenses associated with the ownership of the Condo.

November, 1999, came and went and Nelson still had never seen or signed a DROA or other contract for the purchase and sale of the Condo, and Bilanzich had not signed a promissory note or a second mortgage to secure payment of the balance owed. When the balloon payment on the existing mortgage became due in November of 1999, Nelson paid off the existing note.

As stated by the Intermediate Court of Appeals in Mednick v. Davey, 87 Haw. 450, 458; 959 P.2d 439, 447 (Haw. App.,1998)

> The Hawai'i Supreme Court has instructed that:
>
> [i]t is an elementary rule of contract law that there must be mutual assent or a meeting of the minds on all essential elements or terms in order to create a binding contract. And where a contract is complete and certain with respect to the essential and material terms and conditions of a lease, and no further negotiations as to other essential matters are contemplated, such a contract to enter into a lease will be enforced.
>
> Malani v. Clapp & Furuya, 56 Haw. 507, 510, 542 P.2d 1265, 1267 (1975). The corollary to the foregoing rule is that where the parties contemplate further negotiations, no binding contract exists. As 17A Am.Jur.2d *Contracts* § 38 (1991) observes:
>
> Whether the parties to an oral or informal agreement become bound prior to the drafting and execution of a contemplated formal writing is largely a question of intent, or, as is sometimes expressed, upon whether they intend the formal writing to be a condition precedent to the taking effect of the agreement. If the written draft is viewed by the parties merely as a convenient memorial or record of their previous contract, its absence does not affect the binding force of the contract; if, however, it is viewed as the consummation of the negotiation, there is no contract until the written draft is finally signed.

Mednick v. Davey, 87 Haw. 450, 458; 959 P.2d 439, 447 (Haw.App.,1998) See also Pantzer v. Shields Development Co., 660 F. Supp. 56, 60 (D. Del. 1986) (no contract

because anticipated formal agreement subsequent to Letter of Intent was never executed by the parties).

In the instant case, Nelson in effect agreed to agree to sell the Condo at some later date subject to several conditions precedent, one being an agreement as to when the balance of the purchase price was to be paid, a second being the drafting of a DROA or other contract setting forth the terms of the parties agreement which she then intended to have reviewed and approved by legal counsel, and lastly, the right to use the BACC trade name at 5 locations in Montana for 10 years and credits for the purchase of merchandise for the stores at those locations.  In the interim, BACC USA, it's employees and/or Bilanzich could use the Condo so long as they paid certain expenses associated with the condo.  At most there was an enforceable month to month lease arrangement which Bilanzich, and subsequently Jones, breached in any event.

      B.      THE ALLEGED "AGREEMENT OF SALE" IS UNENFORCEABLE.

          1.      **The alleged "Agreement of Sale" does not comply with the Hawaii Statute of Frauds.**

To be enforceable an agreement for the purchase and sale of real property must be in writing and signed by the party to be bound thereby.  In this case, Jones argues that the alleged Agreement of Sale is comprised of three pages, page 5 of the Letter of Intent and two pages of amortization schedules, each signed by Nelson and Lovell for "M. B."

The common law Statute of Frauds as codified in HRS, § 656-1 provides that any agreement concerning an interest in land and/or any agreement that is not to be performed within one year must be in writing to be enforceable.

HRS, § 656-1 states in relevant part as follows:

> No Action shall be brought and maintained in any of the following cases:
> 4. Upon any contract for the sale of lands, tenements, or hereditaments, or of any interest in or concerning them;
> 5. Upon any agreement that is not to be performed within one year from the making thereof; ....
>
> unless the promise, contract, or agreement, upon which the action is brought, or some memorandum or note thereof, is in writing, and is signed by the party to be charged therewith, or by some person thereunto by the party in writing lawfully authorized.

Nelson executed the Letter of Intent to evidence her intention to sell at some later date believing that the final terms and conditions of the transaction would be negotiated and incorporated into a formal DROA or other contract. It is undisputed that no DROA or other contract for the sale of the Condo was ever negotiated or put into writing between Cetraro and BACC USA and/or Royal Aloha and/or Bilanzich.

Jones alleged interest in the Condo therefore appears to arise from an assignment of an oral or parol agreement allegedly made between Nelson and Lovell for

"M. B." for the purchase and sale of the Condo. The Hawaii Supreme Court has held that:

> [t]o be enforceable a contract must be certain and definite as to its essential terms.... A party seeking to establish a parol contract to convey real property must prove its existence and its terms by clear and convincing evidence. (citations omitted)
>
> Boteilho v. Boteilho, 58 Haw. 40, 42, 564 P.2d 144, 146 (Hawai'i 1977); See also In Re Sing Chong Co., Ltd., 1 Haw.App. 239, 617 P.2d 578 (1980).

The alleged "contract" for the purchase and sale of the Condo is anything but "certain and definite" as to its essential terms. Jones can produce no set of facts which clearly and convincingly prove the essential terms of the alleged parol agreement.

Once an oral contract is clearly and convincingly established, the removal of said oral contract "from the operation of the Statute of Frauds" by its part performance, must also be proven by "clear and convincing evidence." Shannon v. Waterhouse, 58 Haw. 4, 7, 563 P.2d 391, 394 (Hawai'i 1977).

> courts require the part performance to be of a character which is unequivocally referable to the alleged parol agreement and cannot admit of explanation without reference to such agreement....The acts constituting part performance "must clearly appear to have been done in pursuance of the contract, and to result from the contract and not from some other relation." (citations omitted)
>
> Rossiter v. Rossiter, 4 Haw. App. 333, 339, 666 P.2d 617, 621 (Haw. App. 1983). See also Lopez v. Soy Young, 9 Haw. 117 (Hawai'i 1893)

In this case there was a request and an agreement that BACC USA and/or Royal Aloha and/or Bilanzich could have immediate use of the Condo subject to the payment for that use and that if there was to be a subsequent sale of the property, the terms and conditions of that sale would be put into a DROA or other form of a contract. Nelson and Lovell signed page 5 fo the Letter of Intent setting forth various negotiating points for the contemplated purchase of the Condo and itemized the "expenses" associated with the use of the Condo pending any sale. Payment of the monthly expenses in consideration for possession and use is consistent with an unwritten lease agreement and cannot be said to be "unequivocally referable to" the alleged Agreement of Sale. Nor can it be said that the use and payment for that use "clearly appear to have been done in pursuance of the contract, and to result from the contract and not from some other relation."

Even if the document which Jones alleges to be an "agreement of sale" is determined to be such, it still does not comply with the requirements of the statute of frauds and is therefore unenforceable because it does not contain complete and essential terms as required by the statute of frauds. The Hawaii ICA, in determining that a agreement of sale did not comply with the statute of frauds has held that:

> An agreement of sale of land which contains complete and certain essential terms is a valid and enforceable contract if the facts indicate that the parties at the time it was entered into had no expectation of further provisions to be negotiated later. <u>Essential terms are the identification of the parties, a description of the property sold, the price, the time and manner of payment and any other terms in the agreement which are essential to the agreement.</u>

<u>Miller v. Pepper,</u> 2 Haw. App. 629, 631, 638 P.2d 864, 866 (Hawaii App., 1982) [Emphasis Added]

Even a cursory review of the document which Jones argues is the "Agreement of Sale" evidences that it does not contain any of the essential terms as required by the statute of frauds. The Parties are not identified with any certainty. The document was signed by Nelson and "D. W. Lovell for M. B." There is no description of the property to be sold pursuant to the alleged agreement. The anticipated purchase price for the property, $135,000, is not listed. The time and manner of the payment of the $135,000 purchase price is not set forth, instead, the document contains two amortization schedules for the payment of the amount of $70,000 which Jones characterizes as "options." Moreover the alleged agreement does not contain essential terms relating to the license fees and coffee credits which Jones argues was the "down payment" for the purchase of the property nor does it contain any provisions as to the rights and/or obligations of the unidentified parties should the "down payment" fail.

The undisputed truth is that the document which Jones asserts is the written agreement of the parties is incomplete, anything but clear, and in fact so confusing as to be unintelligible other than in the context of a rambling memorialization as to the status of the parties negotiations to date with a written intention that additional "paper work" was yet to be completed.

    **2.**    **The alleged "Agreement of Sale" is unenforceable due to failure of conditions precedent, failure of consideration and breach of material terms**.

The facts, as will be proven at trial and for the large part are undisputed, are as follows. Jones alleges that there is an enforceable agreement for the sale of the property. Although he at times seem uncertain as to what the purchase price was to be, he has at lease been consistent in his assertions that the purchase price was to be paid by way of credits for the licenses to operate BACC stores in Montana, credits for the purchase of coffee and merchandise for the Montana stores and that the balance would be paid in monthly installments.

It is undisputed that any agreements regarding the use of the BACC trade name in Montana and credits for coffee and/or merchandise failed. BACC USA and/or Royal Aloha terminated any rights to use the BACC trade name or to sell BACC logo products. Royal Aloha filed a petition for relief under Chapter 7 of the Bankruptcy Code. The Trustee in the Royal Aloha Bankruptcy case rejected the License Agreement. Shortly thereafter Bilanzich wrote all BACC licensees claiming that Royal Aloha had transferred the trade name to Bad Ass Coffee Company of Hawaii, a Utah corporation (BACCH) before filing Bankruptcy and that any further use of the trade name was contingent upon entered into a franchise agreement with BACCH. BACCH refused to sell any coffee or other logo products to Nelson and Cetraro. Nelson and Cetraro did not receive the credits for the purchase of BACC logo coffee and/or merchandise and they were subsequently sued by BACCH to enjoin their use of the trade name, the very rights and credits that Jones alleges formed the "down payment" for the Condo purchase. It cannot be disputed that there was a complete failure of conditions precedent and a failure of the

consideration which Nelson was to receive pursuant to the License Agreement as partial payment for the Condo.

Not only was there been a total failure of consideration regarding the License Agreement and coffee credits which Jones argues was part of the consideration for the purchase of the Condo, there was a failure of consideration and/or material breach regarding the monthly payments which Jones alleges were to be made for the purchase of the Condo. It is undisputed that the monthly payments for either the use and/or alleged purchase of the Condo were not made. Even according to Jones own accountings, Jones did not make the payments required by the alleged agreement. Jones has breached the terms of the very "agreement" upon which he relies for his alleged claim of ownership and/or right to purchase the Condo from Nelson.

In this case it cannot be disputed that any alleged agreement for the purchase and sale of Unit 406 is completely executory. Title has never been conveyed and the alleged purchase price has never been paid.

In State v. Thom, 58 Haw. 8, 16 (1977) the Hawaii Supreme Court cited with approval the Texas Civil Court of Appeals' opinion in Rhiddlehoover v. Boren, 260 S.W.2d 431, 433 (Tex. Civ. App. 1953), as follows:

> . . . a vendor under an executory contract for the sale of real property retains the "superior title," as against the purchaser and those in privity with him, until the contract is executed or performed on the part of the purchaser by paying the purchase money or discharging the debt therefor.
> (Citation omitted.)

In this case, a contract for the purchase of the Condo was never executed and the purchase price has not been paid. Nelson is therefore entitled to a declaration holding that she was at all times the sole and rightful owner of the Condo and that Defendant Jones, or any other person or entity, has no interest in the property.

In <u>Bishop Trust Co. v. Kamokila Develop. Corp.</u>, 57 Haw. 330, 555 P.2d 1193 (1976), the Hawaii Supreme Court canceled an agreement for the conveyance of land for failure of consideration stating as follows:

> Appellant's failure of performance was such as to entitle Mrs. Campbell to restitution of the property given by her in exchange for the promised performance. It is variously stated that the right of restitution exists where the non-performing party has committed a "material", or a "total" or a "vital" breach of the contract, which goes to its "essence". RESTATEMENT OF RESTITUTION § 108 (1937); 5 CORBIN, CONTRACTS § 1104 (1964). Here the agreement conferred no benefit on Mrs. Campbell except by way of her stockholder's share of returns derived by Appellant from the development of the leased land. The failure of consideration was total and more than meets the test. Where land has been conveyed in exchange for the defaulted performance and the damages are not readily ascertainable, cancellation of the deed is the appropriate remedy.
> <u>Supra</u>, 57 Haw. 330, 334

In this case, any alleged agreement was completely executory, but even if Jones could prove a binding oral agreement, the agreement is not enforceable due to a total failure of conditions precedent and for failure of consideration. As the property was never conveyed to Jones, this Court cannot order restitution of the property to Nelson,

however a declaration stating that Jones had no interest in the property is appropriate under the circumstances of this case.

### C.  CLAIMS MADE BY JONES IN HIS SECOND AMENDED COUNTERCLAIM

#### 1. Counts III and V of Jones Counterclaim are moot

In this Court's Order Clarifying Remaining Parties and Claims filed April 26, 2006, the Court stated, that by implication, Counts II (Breach of Contract), Count III (Breach of Contract for Specific Performance) and Count V (Declaratory Relief) of Jones Second Amended Counterclaim were reinstated pursuant to the Ninth Circuits remand. Count III seeks specific performance of the alleged Agreement of Sale, to wit "transfer of title to Jones or his nominee". Count V seeks a declaration from the Court that Jones has a "beneficial ownership in the property, and is entitled to transfer of ownership of record, and his right to continued possession and quite enjoyment."

Jones voluntarily released his Notice of Pendency of Action on the property and surrendered possession of the property to Nelson in 2003. Jones did not move to stay enforcement of this Court's Judgment pending his appeal and the property was subsequently sold to a third party. Beyond the fact that Jones is not entitled to the relief he requests in Count III and Count V because the alleged purchase price was never paid, even assuming that there was a valid enforceable agreement for the purchase and sale of the property, the relief requested is unavailable due to the subsequent sale of the property and Counts III and V of Jones Second Amended Counterclaim are therefore moot.

## 2.  Jones is not entitled to any damages pursuant to Count II of his Second Amended Counterclaim

In Count II of his Second Amended Counterclaim, Jones alleges that "Since July 1998 Nelson has breached the contract of sale by failing to transfer title to Jones, or his nominee." Jones alleges that as a result he is entitled to damages. Jones allegation of breach of the alleged agreement by Nelson is without merit. According to Jones, the agreement for the purchase and sale of the property was an Agreement of Sale. It is axiomatic that pursuant to an Agreement of Sale, title is not to be transferred until the purchase price has been paid in full. State v. Thom, 58 Haw. 8, 16 (1977) citing Rhiddlehoover v. Boren, 260 S.W.2d 431, 433 (Tex. Civ. App. 1953) as set forth on page 13 herein. It is not disputed that the alleged purchase price was never paid, therefor Nelson had no duty to "transfer title to Jones, or his nominee" and could not have therefore breached the non existent duty.

Moreover, even if Nelson had breached the alleged Agreement of Sale by failing to deliver title, Jones has suffered no damages as a result of the alleged breach. According to Jones, Nelson breached the agreement of sale in July of 1998. Where a seller breaches an agreement to sell, the purchasers measure of damages is the difference between the fair market value of the property at the time of the breach and the contact price. Here, if there was to be a sale, the contract price would have been $135,000. According to Jones, Nelson breached the contract by failing to deliver title in July of 1998. In this case there is no evidence as to the value of the property in July of 1998, the time of the alleged breach.

Jones expert has opined that the valuation of the property as of June 1, 1998 was $120,000. Assuming for the sake of argument that this Jones expert appraiser's valuation is accurate, Jones has suffered no damages. To the contrary, according to Jones own valuations, Nelson's alleged breach resulted in a $15,000 saving to Jones.

Even if Jones were successful in arguing that Nelson somehow breached the alleged Agreement of Sale by failing to deliver title even though the purchase price had not been paid, Jones still has suffered no damages as alleged in Count II of the Second Amended Counterclaim.

### III.   COSTS AND ATTORNEYS FEES

Nelson is entitled to an award of her costs and attorneys fees incurred herein pursuant to the provision of HRS, § 407-14 which provides as follows:

> In all the courts, in all actions <u>in the nature of assumpsit</u> ..., there <u>shall be taxed as attorneys' fees</u>, to be paid by the losing party and to be included in the sum for which execution may issue, a fee that the court determines to be reasonable ... provided that this amount shall not exceed twenty-five per cent of the judgment.

There can be no doubt that the claims made herein by Jones are in the nature of assumpsit. Jones has alleged breach of contract in his Counterclaim and claims that he has been damages as a result of said breach in an amount in excess of $400,000. In <u>Metcalf v. Voluntary Employees' Ben. Assoc.</u>, 99 Haw. 53, 52 P.3d 823(2002) the Hawai'i Supreme Court stated:

This court has noted that "'assumpsit' is `a common law form of action which allows for the recovery of damages for non-performance of a contract, either express or implied, written or verbal, as well as quasi contractual obligations.'" Blair v. Ing, 96 Hawai`i 327, 332, 31 P.2d 184, 189 (2001) (quoting TSA Int'l. Ltd. v. Shimizu Corp., 92 Hawai`i 243, 264, 990 P.2d 713, 734 (1999)).

Nelson is entitled to her fees in cost incurred herein pursuant to HRS, § 407-14.

## IV.    CONCLUSION:

The issues presented for trail are:

(1)    whether the parties entered into an Agreement of Sale with respect to the Kona, Hawaii condominium;

(2)    if so, whether the Agreement of Sale is enforceable;

(3)    who has the right to possession and ownership of the Kona, Hawaii condominium

With respect to the first question, the evidence will show that there was no Agreement of Sale . At most there was a loose understanding as to a transaction that might transpire at some point in time in the future subject to further discussion, negotiation and the execution of a contract evidencing same.

As to the second question to be determined at trial, if there was an Agreement of Sale, is it enforceable, again the answer is in the negative. The undisputed facts as will be shown at trial is that the Letter of Intent executed by Nelson and "D.W. Lovell for M.B" does not comply with the requirements of the Hawaii Statute of Frauds and is unenforceable. Moreover, even if the "agreement" met the minimum requirement of the Statute of Frauds, there was a complete failure of conditions precedent and of consideration such that the alleged Agreement of Sale is unenforceable. Moreover, the

evident at trial will show that Jones was in any even in material breached such that Jones cannot enforce the alleged Agreement of Sale.

As to the third question to determined at trial, it is submitted that who has the right to possession and ownership of the property has been rendered moot by the subsequenIt sale of the property pending Jones appeal from this Courts prior granting of summary judgment in favor of Nelson. Jones did not move for a stay pending his appeal and voluntarily released his NOPA and voluntary surrendered possession to Nelson. The Court and the partes have lost jurisdiction and control over the property such that the issue of possession and/or ownership is moot.

DATED:   Honolulu, Hawaii, July 27, 2007.

_____
ENVER W. PAINTER, JR.
Attorney for Plaintiff/Counterclaim Defendant
CAROL J. NELSON

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| CAROL J. NELSON, | ) | CV 01-00182 KSC |
|        Plaintiff, | ) | |
| vs. | ) | |
| | ) | |
| ROBERT ALAN JONES | ) | |
|        Defendant. | ) | |
| | ) | |
| | ) | |
| ROBERT ALAN JONES | ) | |
|        Counterclaimant, | ) | |
| vs. | ) | |
| | ) | |
| CAROL NELSON | ) | |
|        Counterclaim Defendant | ) | |
| | ) | |

CERTIFICATE OF SERVICE

I hereby certify that on below date a true and correct copy of the foregoing was duly served upon the following individuals by hand delivery at the following address:

    ROBERT E. CHAPMAN
    MARY MARTIN
    700 Bishop Street, Suite 2100
    Honolulu, Hawaii 96813

DATED:    Honolulu, Hawaii, July 27, 2007

                                        ENVER W. PAINTER, JR.
                                        Attorney for Plaintiff/Counterclaim Defendant
                                        CAROL J. NELSON