ORIGINAL

ENVER W. PAINTER, JR.   2525
Attorney at Law
1188 Bishop Street, Suite 2505
Honolulu, Hawaii 96813
Telephone: (808) 537-9777

FILED IN THE
UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII

JUL 27 2007

at 3 o'clock and 15 min. P M.
SUE BEITIA, CLERK

Attorney for Plaintiff and
  Counterclaim/Defendant
  Carol J. Nelson

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| CAROL J. NELSON,<br><br>        Plaintiff,<br>vs.<br><br>ROBERT ALAN JONES<br><br>        Defendant.<br><br>ROBERT ALAN JONES<br><br>        Counterclaimant,<br>vs.<br>CAROL NELSON<br><br>        Counterclaim<br>        Defendant. | CV 01-00182 KSC<br><br><br>PLAINTIFF'S PROPOSED<br>FINDINGS OF FACT AND<br>CONCLUSIONS OF LAW and<br>CERTIFICATE OF SERVICE<br><br>Bench Trial<br>August 7, 2007<br>Magistrate Judge<br>  Kevin S. S. Chang |

**PLAINTIFF'S PROPOSED**
**FINDINGS OF FACT AND CONCLUSIONS OF LAW**

Plaintiff, CAROL J. NELSON (Nelson) by and through her undersigned attorney, hereby submit these proposed Findings of Fact and Conclusion of Law pursuant to the Court's Forth Amended Rule 16 Scheduling Order filed on January 5, 2007.

### PLAINTIFF'S PROPOSED FINDINGS OF FACT

This matter came on for bench trial on August 7, 2007 before the Honorable Kevin S. S. Chang, Magistrate Judge of the above entitled Court by consent of the parties. The Court, having heard and considered all the evidence presented and testimony adduced at the trial in this case, and having observed the demeanor of the witnesses, and having evaluated their credibility and candor, and having heard and considered the arguments of counsel and memoranda filed herein, finds the facts of this case to be as follows. If it should later be determined that any of these findings of fact should be properly deemed conclusions of law, the Court so concludes on those legal issues.

1. The subject of this lawsuit is a residential condominium unit located at 75-5719 Ali'i Drive in Kailua-Kona, Hawaii ("Condo')

2. Title to the Condo was, at all times relevant, vested solely in Plaintiff/Counterclaim Defendant, Carol J. Nelson, ("Nelson")

3. While visiting on the big island of Hawaii in February or March of 1997, Michael Cetraro ("Cetraro") stopped into a coffee shop called Bad Ass Coffee Company in Kailua-Kona. In that shop, Cetraro had a conversation with an individual by the name of Dennis Lovell ("Lovell") regarding Cetraro operating Bad Ass Coffee

Company ("BACC") stores in the state of Montana. Cetraro had further discussion with Lovell and with Mike Bilanzich (Bilanzich) who lived in Utah and who Cetraro understood to be the principal of a company in Utah which owned the Bad Ass Coffee Company trade name.

4. During these discussions Bilanzich learned that Nelson owned Unit No. 406 in the Kona Plaza condominium in Kailua-Kona (Condo). Bilanzich stated that he was in immediate need of a condo in Kona to house BACC employees and that he or one of his BACC related entitles might be interested in purchasing Nelson's Condo. Bilanzich however wanted immediate use of the Condo pending any anticipated purchase.

5. Bilanzich stated that he would be willing to give credits for licensing fees for the use of the trade name as part consideration for the purchase of the Condo. Nelson agreed to allow him to use the Condo in the interim period so long as he paid all of the costs associated with the Condo.

6. These discussions resulted in the signing of a License Agreement on April 23, 1997. The parties to the License Agreement were BACC USA as licensor and Nelson and Cetraro as licensees. The License Agreement was intended to give Cetraro the right to use the trade name, Bad Ass Coffee Company at five to be determined locations in Montana for a period of ten years.

7. Although the License Agreement did not mention the Condo, Nelson understood that any future purchase of the Condo was conditioned upon the right to

operate five (5) Bad Ass Coffee Company retail stores in Montana for a period of 10 years, the negotiation and receipt of credits for the purchase of coffee and or other logo products, the negotiation and signing of a Deposit Receipt Offer and Acceptance real estate contract ("DROA") or other form of a contract for the purchase of the Condo and agreement as to the payment of the balance of the purchase price which was to be evidenced by a promissory note and secured by a second mortgage.

8. Nelson understood that if Bilanzich was going to purchase the Condo, the transaction would be consummated by the time the balloon payment on the existing mortgage became due in November of 1999

9. Nelson understood that the purchase price for the Condo would be $135,000 and would be paid through a combination of credits against licensing fees, credits for purchase of BACC logo coffee and merchandise and that any balance due paid in cash. Credits against the purchase price were conditioned upon the right to open five (5) retail coffee stores in Montana and receiving credits for coffee purchases.

10. Nelson understood that if the sale of the Condo was to go forward, Cetraro and Bilanzich would negotiate all remaining terms which would be included in a formal written contract. Nelson further understood that if there was to be a sale, any unpaid portion of the purchase price would be evidenced by a promissory note and secured by a mortgage and that the balance due would be paid in full by November 1999, the date that the balloon payment on her existing mortgage became due.

11. So that everyone understood what was contemplated, Cetraro drafted a Letter of Intent setting forth various scenarios for the purchase of the Condo consisting of different combinations of license and coffee credits and cash based upon future hypothetical events. Nelson and Lovell for "M.B."signed the Letter of Intent on April 29, 1997.

12. Nelson understood that Cetraro and Bilanzich would negotiate and draft a formal written contract for the purchase and sale of the Condo. However, no writing or contract was ever negotiated, drafted or executed by Nelson and Bilanzich for the purchase and sale of the Condo.

13. Bilanzich and/or BACC USA and/or Royal Aloha Coffee Tea & Spice ("Royal Aloha") were given possession of the Condo and began making monthly payment for the use of the Condo pending any future sale of the Condo to Bilanzich and/or BACC USA and/or Royal Aloha Coffee Tea and Spice.

14. Bilanzich and/or BACC USA and/or Royal Aloha began making payment for the use of the Condo, however the payments were sporadic at best. By June of 1998 payments for the use of the Condo were approximately $7000 in arrears.

15. Nelson continued to pay the utilities, association fees, real property taxes and other expenses associated with the ownership of the Condo.

16. In May of 1999 Defendant Alan Jones ("Jones") had discussions with Cetraro regarding his possible use of the Condo and taking over "Bilazich's deal"

regarding the future purchase of the Condo. Jones and Cetraro discussed the need for "further documentation" regarding Bilanzich and/or Jones future purchase of the Condo.

17. On July 1,1998, Royal Aloha and Jones, in settlement of a lawsuit between Jones and/or Bilanzich and/or BACC entities owned by Bilanzich, entered into an Asset Purchase Agreement whereby, *inter alia*, Royal Aloha quit claimed and assigned without representation or warrantees any interest it had in the Condo to Jones

18. Bilanzich and/or one of his entities gave Jones possession of the Condo in June of 1999. No DROA or other contract regarding Bilanzich and/or Jones's future purchase of the Condo was ever negotiated or executed by Jones and Nelson .

19. In April of 1999 Royal Aloha filed a Chapter 7 Petition in the United States Bankruptcy Court for the District of Utah.

20. The balloon payment on Nelson's existing mortgage came due in November, 1999. As of that date, no DROA or other contract for the purchase of the Condo had ever been negotiated or executed and Nelson paid the underlying note secured by the existing mortgage.

21. On November 19, 1999 the Royal Aloha Bankruptcy Trustee wrote all Royal Aloha licensees advising that the Trustee had rejected the License Agreement. The Trustee subsequently sued Nelson for the payments Royal Aloha had made to Nelson for the use of the Condo.

22. On November 24, 1999 Bilanzich s wrote all BACC USA licensee

saying that the BACC trade name had been assigned to a new entity, BACC of Hawaii, a Utah Corporation ("BACCH") prior to the filing of the Royal Aloha Bankruptcy petition and that licensees would no longer be authorized to use the BACC trade name unless they entered into Franchise Agreement with BACCH.

23. BACCH subsequently sued Nelson and Cetraro claiming that they no longer had any rights to use the BACC trade name pursuant to the License Agreement and that any use of the trade name constituted an unlawful infringement upon the trade name.

24. After making the monthly payments for the months of June, 1998 to November, 1998, Jones began defaulting on his monthly Condo payments and remained in arrears for most of the time he remained in possession of the Condo.

25. Despite Jones's default in making the monthly payments, Nelson continued to pay the monthly mortgage payment, common area maintenance fees, taxes, and utilities because the Condo and the utility services to the Condo remained in her name.

26. Jones discontinued making any payments to Nelson in November of 2000.

27. In January of 2001 Jones wrote Nelson acknowledging that payment to Nelson were past due and stated that he hoped to bring all arrear current within 7-10 days.

28. Jones did not bring the past due amounts current or make any further payments to Nelson.

29. On February 13, 2001 Nelson brought a summary possession action in the Circuit Court of the Third Circuit, State of Hawaii. Jones removed the summary possession action to this Court and filed counterclaims against Nelson and other "counterclaim defendants" alleging among other things, various conspiracies to defraud him of his interest in the Condo, conversion of the payments he had made and other theories of liability.

30. Jones remained in possession of the Condo, however he did not make any payment to Nelson for his use of the Condo until ordered to do so by this Court.

31. Nelson subsequently moved for summary judgment as to Counts I and III of her Complaint and as to all of Jones counterclaim. This Court dismissed Jones counterclaims and held that any agreement for the purchase of the Condo was unenforceable.

32. Jones appealed, however he did not seek a stay of this Court's judgment pending his appeal and voluntarily surrendered possession of the Condo to Nelson while his appeal was pending. By the time Jones surrendered possession of the Condo to Nelson he owed in excess of $25,000 for his use of the Condo, no part of which has ever been paid. Nelson subsequently sold the Condo to an unrelated third party.

33. The Ninth Circuit Court of Appeals vacated the District Court's

granting of Nelson's motion for summary judgment to the extent that:

>   (1)   the district court concluded that the Agreement of Sale was invalid due to a failure of consideration or condition precedent and,
>
>   (2)   the district court relied on Jones material breach of the Agreement

34.   The case was remanded to this Court on these two issues.

35.   On January 24, 2006, Jones filed a Motion for Clarification as to Remaining Parties and Claims. Judge Gillmor heard the Motion and ruled that only Count I and II of the Complaint and, by implication, Counts II (Breach of Contract), Count III (Breach of Contract for Specific Performance) and Count V (Declaratory Relief) of Jones Second Amended Counterclaim were reinstated.

36.   Judge Gillmor further ruled that all other claims made were not at issue and that this matter would proceed to trial between Nelson and Jones on the following issues:

>   (1)   whether the parties entered into an Agreement of Sale with respect to the Kona, Hawaii condominium;
>
>   (2)   if so, whether the Agreement of Sale is enforceable; and
>
>   (3)   who has the right to possession and ownership of the Kona, Hawaii condominium.

## CONCLUSIONS OF LAW

Based upon the preceding Findings of Fact, the Court concludes as follows. Should it later be determined that any of these conclusions of law should be properly deemed to be findings of fact, then the Court so finds as to those facts.

1. The Court has jurisdiction over the subject matter and the parties in this case.

2. As to the first issue on remand, whether the parties entered into an Agreement of Sale with respect to the Kona, Hawaii condominium, the Court concludes that they did not. For there to be an agreement for the purchase and sale of the Condo their must have been mutual assent or a meeting of the minds as to all essential elements or term in order to create a binding contract. Malani v. Clapp & Furuya, 56 Haw. 507, 510, 542 P.2d 1265, 1267 (1975); Mednick v. Davey, 87 Haw. 450, 458; 959 P.2d 439, 447 (Haw. App.,1998) There was no meeting of the minds at to essential terms such as the panties to the transaction, the payment of the purchase price, when the purchase price was to be paid, what would happen if the License Agreement was not honored during the 10 year life of the agreement and/or what would happen if credits for BACC logo coffee and merchandise was not received as contemplated.

3. In this case Nelson and Lovell for "M. B." signed a Letter of Intent regarding the possible future purchase of the Condo. The Letter of Intent set forth various possible scenarios regarding any future purchase of the Condo. It was understood

by Nelson and Bilanzich that further negotiations would be conducted and if agreement was reached on all essential terms, their agreement would be set forth in a DROA or other formal contract to be executed by the parties.  In this case, there was no Agreement of Sale for the Condo because the anticipated formal agreement subsequent to Letter of Intent was never executed by the parties.  Malani v. Clapp & Furuya Id at 510, citing 17A Am.Jur.2d *Contracts* § 38 (1991) (where the parties contemplate further negotiations, no binding contract exists);  Pantzer v. Shields Development Co., 660 F. Supp. 56, 60 (D. Del. 1986) (no contract because anticipated formal agreement subsequent to Letter of Intent was never executed by the parties).

    4.    As to the Second question on remand, even assuming that there was an Agreement of Sale, was it enforceable?  In this case, the Letter of Intent, even if construed as an Agreement of Sale is unenforceable.  First, the document does not meet the minimal requirement of a written contract as required by the Hawaii Statute of Frauds as codified in HRS, § 656-1.  To be enforceable a contract must be certain and definite as to its essential terms.  A party seeking to establish a parol contract to convey real property must prove its existence and its terms by clear and convincing evidence.  Boteilho v. Boteilho, 58 Haw. 40, 42, 564 P.2d 144, 146 (Hawai'i 1977); In Re Sing Chong Co., Ltd., 1 Haw. App. 239, 617 P.2d 578 (1980)

    5.    An agreement of sale of land which contains complete and certain essential terms is a valid and enforceable contract if the facts indicate that the parties at

the time it was entered into had no expectation of further provisions to be negotiated later. Essential terms are the identification of the parties, a description of the property sold, the price, the time and manner of payment and any other terms in the agreement which are essential to the agreement. Miller v. Pepper, 2 Haw. App. 629, 631, 638 P.2d 864, 866 (Hawaii App., 1982)

      6.    The document which Jones argues is the "Agreement of Sale" does not contain any of the essential terms as required by the Hawaii statute of frauds. The parties are not identified with any certainty. The document was signed by Nelson and "D. W. Lovell for M. B." There is no description of the property to be sold pursuant to the alleged agreement. The anticipated purchase price for the property, $135,000 is not listed. The time and manner of the payment of the $135,000 purchase price is not set forth, instead, the document contains two amortization schedules which Jones characterizes as "options." Moreover the alleged agreement does not contain essential terms relating to the credits for license fees and credits for the purchase of BACC logo coffee and merchandise which Jones argues was the "down payment" for the purchase of the property nor does it contain any provisions as to the rights and/or obligations of the unidentified parties should the "down payment" fail.

      7.    Moreover, It is undisputed that any agreements regarding the use of the BACC trade name in Montana and credits for coffee and/or merchandise failed. The Trustee in the Royal Aloha Bankruptcy case rejected the License Agreement. Shortly thereafter Bilanzich wrote all BACC licensees claiming that Royal Aloha had transferred

the trade name to BACCH before filing Bankruptcy and that any further use of the trade name was contingent upon entered into a franchise agreement with BACCH. Nelson and Cetraro were denied the right to operate 5 BACC stores for 10 year as provided for by the License Agreement. BACCH refused to sell any coffee or other logo products to Nelson and Cetraro. Nelson and Cetraro did not receive the $20,000 in coffee credits and were subsequently sued by BACCH to enjoin their use of the trade name, the very rights and credits that Jones alleges formed the "down payment" for the Condo purchase. The Court concludes based upon these facts that there was a complete failure of conditions precedent and a failure of the consideration which Nelson was to receive as partial payment for the Condo.

    8. Lastly, it is clear that even if there was an Agreement of Sale for the Condo, and even if there had been no failure of conditions precedent and of consideration on the part of Bilazich, Royal Aloha, BACC USA and or related entities, Jones was in material breach of the very agreement he seeks to enforce in this action. Jones own evidence shows that he failed to make the monthly payments when required. He never fulfilled his "hope" to bring the payments current and Nelson pursued her legal remedies by filing this action. As of the date he voluntarily surrendered possession of the Condo to Nelson, Jones owed Nelson approximately $25,000 for his past use of the Condo, no part of which has ever been paid.

    9. Nelson is entitled to judgement in her favor as to Count I ("Summary Possession") and Count II ("Declaratory Relief") of the Complaint.

10. Nelson is also entitled to judgment in her favor as to Count II of Jones Second Amended Counterclaim.

11. The Court concludes that Count III (Breach of Contract for Specific Performance) and Count V (Declaratory Relief) of Jones Second Amended Counterclaim are rendered moot as a result of the sale of the Condo to an unrelated party during the pendency of this action.

### **DECISION AND ORDER**

Based upon the foregoing Findings of Fact and Conclusions of Law, it is hereby

**ORDERED, ADJUDGED, AND DECREED** that judgment be entered accordingly, in form and content consistent with these findings and conclusions.

DATED: Honolulu, Hawaii, _____

_____
KEVIN S. S. CHANG
Magistrate Judge

DATED: Honolulu, Hawaii, July 27, 2007.

_____
ENVER W. PAINTER, JR.
Attorney for Plaintiff/Counterclaim Defendant
CAROL J. NELSON

-2-

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| CAROL J. NELSON, | ) | CV 01-00182 KSC |
|     Plaintiff, | ) | |
| vs. | ) | |
| | ) | |
| ROBERT ALAN JONES | ) | |
|     Defendant. | ) | |
| | ) | |
| ROBERT ALAN JONES | ) | |
|     Counterclaimant, | ) | |
| vs. | ) | |
| | ) | |
| CAROL NELSON | ) | |
|     Counterclaim Defendant | ) | |

CERTIFICATE OF SERVICE

I hereby certify that on below date a true and correct copy of the foregoing was duly served upon the following individuals by hand delivery at the following address:

    ROBERT E. CHAPMAN
    MARY MARTIN
    700 Bishop Street, Suite 2100
    Honolulu, Hawaii 96813

DATED:    Honolulu, Hawaii, July 27, 2007

_____
ENVER W. PAINTER, JR.
Attorney for Plaintiff/Counterclaim Defendant
CAROL J. NELSON