ORIGINAL

FILED IN THE
UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII

AUG 20 2007

at 3 o'clock and __ min __ P.M.
SUE BEITIA, CLERK

ENVER W. PAINTER, JR.   2525
Attorney at Law
1188 Bishop Street, Suite 2505
Honolulu, Hawaii 96813
Telephone: (808) 537-9777

Attorney for Plaintiff and
 Counterclaim/Defendant
 Carol J. Nelson

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| CAROL J. NELSON, | ) | CV 01-00182 KSC |
| | ) | |
| Plaintiff, | ) | |
| vs. | ) | |
| | ) | |
| ROBERT ALAN JONES | ) | PLAINTIFF'S WRITTEN |
| | ) | CLOSING ARGUMENT |
| | ) | and CERTIFICATE |
| | ) | OF SERVICE |
| Defendant. | ) | |
| | ) | |
| ROBERT ALAN JONES | ) | |
| | ) | Bench Trial |
| Counterclaimant, | ) | August 7, 2007 |
| vs. | ) | Magistrate Judge |
| | ) |   Kevin S. S. Chang |
| CAROL NELSON | ) | |
| | ) | |
| Counterclaim | ) | |
| Defendant. | ) | |

Comes now Plaintiff and Counterclaim Defendant Carol J. Nelson, through her undersigned counsel and respectfully submits this written closing argument.

**I.     There was no "agreement" for the purchase and sale of the Condo.**

If anything is apparent from the evidenced adduced during the trial of this matter, it is that there was never an agreement by Bilanzich to purchase the subject property. There were negotiations regarding a possible purchase but Bilanzich never actually committed to purchase the Condo from Nelson. Bilanzich had requested and Nelson had agreed to allow Bilanzich to use the Condo pending his decision to purchase so long as he paid for that use and that if he subsequently decided to in fact purchase the Condo, his "use" payments would be applied to the purchase price.

Discussions regarding licensees for BACC stores in Montana, trade credits and the possible future purchase of the Condo were had between Cetraro, Bilanzich and Lovell. These discussions were memorialized by Cetraro in what he and Nelson have always referred to as the "letter of intent." By the very terms of the "letter of intent" Bilanzich had not yet decided to purchase the Condo. As testified to by Cetraro, Bilanzich decision was contingent upon whether the holder of the first mortgage on the property, the Burgetts, would waive the due on sales clause contained in their first mortgage. Whether the Burgetts would waive the due on sales clause, and if so, extend the date of the existing balloon payment on

their first mortgage was never determined. The date of Bilanzich's purchase was therefor left blank in the letter of intent. The note evidencing the amount of any balance that would be due after licensee fees and trade credits and when the balloon payment on that note would become due were never negotiated and executed as specifically provided for in the letter of intent.

No DROA or other contract for the purchase and sale was ever negotiated or executed by Nelson as provided for by the letter of intent. Nelson had always insisted that if there was to be a sale of the Condo to Bilanzich, the terms and conditions of the sale would be contained in a DROA or other contract to be reviewed by her and/or counsel. When Nelson signed the letter of intent, she did not believe that there was an agreement for the purchase and sale of the Condo or that the letter of intent was the "legal" document she required before she would agree to any sale to Bilanzich. She did however agree to give Bilanzich possession of the Condo so long as he paid for that possession.

Within a few months, Bilanzich began defaulting in the payments he was to make for the use of the Condo. The real estate market softened and the purchase price that had been discussed was no longer a good price. Bilanzich therefor did nothing. He did not contact Cetraro or Nelson and announce that he was ready to proceed with the purchase of the Condo. Instead approximately 1 ½ years later he

assigned whatever rights, "if any" he had to purchase the Condo to Jones in partial settlement of litigation pending between Bilanzich and Jones.

## II. What was the Significance of BACC license and $20,000 in trade credits to the parties performance under the purported Agreement of Sale?

Any sale of the Condo was conditioned upon Nelson and Cetraro receiving the rights to operate 5 BACC stores in Montana for 10 years and the receipt of $20,000 in trade credits for the purchase of BACC logo products for those stores. Nelson, Cetraro and Lovell, the individual that negotiated the purported Agreement of Sale, each testified that this was the understanding regarding any purchase of the Condo. Nelson did not agree to sell the condo for the mere payment of money. She had no incentive to do so. The rents she was receiving from the then tenant of the Condo were $1500 per month, substantially more that the monthly payments to be made by Bilanzich should he elect to purchase the Condo. The "carrot" for any sale of the Condo was the right to operate BACC stores plus the trade credits for the initial inventory for those stores. Any promise to sell was <u>dependent</u> upon Bilanzich's promises regarding licenses and trade credits which were to form a substantial portion of the purchase price. See Am Jur 2d. Vendor and Purchaser § 62-63. Judge Gillmor previously ruled that Jones could not enforce the purported Agreement of Sale for failure of condition precedent and failure of consideration. No facts were developed at trial

which would alter Judge Gillmor's ruling. It is undisputed that trade credits were not received as bargained for and that the license to operate BACC stores was terminated by Bilanzich within 2 ½ years, 7 ½ years short of the 10 years bargained for. This Court should therefore follow the previous ruling of Judge Gillmor.

Jones as the purported assignee of Bilanzich's rights takes those rights subject to the dependant conditions and all defenses regarding Bilanzich's non performance of those conditions. 6 Am Jur 2d Assignments §164. Jones knew of the conditions precedent when he accepted the assignment from Bilanzich and should have know that any rights he obtained via the assignment were subject to Bilanzich's performance of the conditions precedent.

Moreover, neither Bilanzich or Jones ever advised Nelson of the purported assigned by Bilanzich to Jones in January of 1999. Nelson testified that the first time she was ever advised of the purported assignment was subsequent to the filing of her Complaint for summary possession in this case in February of 2001 when Jones attached a copy of the purported assignment to his Counterclaim. It is also undisputed that as early as June 1998, Bilanzich was in default on any agreement for the purchase of the Condo. Trade credits were not being honored as bargained for and Bilanzich was some 5-6 months in arrears on the monthly

payments. In April of 1999 Bilanzich caused Royal Aloha to file Bankruptcy and any license agreement between Royal Aloha and Nelson and Cetraro was deemed rejected 60 days thereafter. (P4)  In September of 1999, Bilanzich refused to sell Nelson and Cetraro any BACC logo coffee or merchandise at all.  In November of 1999 Bilanzich wrote all licensees, including Cetraro and Nelson advising that they did not have the rights to use the BACC trade name, to operate BACC stores and to sell BACC products. (P5)  When Nelson and Cetraro indicated that they disagreed (P6) Bilanzich caused Bad Ass Coffee Company of Hawaii, the purported new owner of the BACC trade name, to file suit against them in Utah. (P7)  The legal significance of these undisputed facts is dispositive of any of Jones remaining Counterclaims. As stated in the Restatement: Contracts §167 (1):

> An assignee's right against the obligor is subject to all limitations of
> the obligee's right, to all absolute and temporary defenses thereto, and
> to all set-offs and counterclaims of the obligor which would have
> been available against the obligee had there been no assignment,
> provided that such defenses and set-offs are based on facts existing at
> the time of the assignment, or are based on fact arising thereafter
> prior to knowledge of the assignment of the obligor.

Illustration 3 to §167 (1) is particularly enlightening in the context of the facts of this case.

> 3. A (Bilanzich) has a bilateral contract with B (Nelson), in which the
> promises are dependent. A assigns his rights thereunder to C (Jones)
> who informs B of the assignment. Thereafter, A wholly fails to perform
> his duties under the bilateral contract. C has no rights against B.

### III. Was Bilanzich's Purported Assignment to Jones Valid?

The assignment from Bilanzich to Jones was invalid. "It is hornbook law that contracts calling for the performance of personal services, including distributorship agreements, which are silent regarding assignments, cannot be assigned without the prior consent of the other contracting party." Berliner Foods Corp. v. Pillsbury Co. 633 F.Supp. 557, *559 -560 (D.Md.,1986) In this case, payment of a portion of the purchase price was in the form of the right to operate 5 BACC stores in Montana for 10 years. Only Bilanzich or his related entities could provide this right. Jones could not. The purported assignment thus required the prior consent of Nelson. Nelson was not given notice of the purported assignment and did not consent thereto. Possession of the Condo was given to Jones by Bilanzich, again without Nelson's consent. Her subsequent acceptance of months payment from Jones for the use of the Condo cannot be construed as consent to or ratification of the assignment or a delegation to Jones of Bilanzich's duty regarding the rights for the 5 BACC stores in Montana or the trade credits. To the contrary, Jones payments for the use of the Condo were consistent with Bilanzich's obligation to pay for the use of the Condo.

Professor Corbin's discussion on the reasons for the non assignability of executory bilateral contracts recognizes that the liability of the assignor, in this

case Bilanzich, to perform pursuant to the original contract is a vital element of the original contract rendering the original contract non assignable. Corbin, Contracts § 74:37. This is especially true when "performance on the part of the assignor, by the terms of the original contract, is to follow the performance of the other side the assignment cannot be permitted because the credit given to the assignor was personal and justice requires that the other party to the contract should not be compelled to perform and trust to the credit of the assignee." Corbin, Contracts § 74:37 pg 466. In this case this reasoning is even more compelling. Here, only Bilanzich or entities under his control could authorize the continued use of the BACC trade name for Montana. Jones was never the owner or licensor of the trade name and had no power to authorize Nelson and Cetraro's continued use of the trade name. Bilanzich withdrew that right which, pursuant to the original contract, was a substantial portion of the payment for the Condo.

Moreover, 3 Restatement Contracts, 2d, § 317(2) provides:

"(2) A contractual right can be assigned unless

"(a) the substitution of a right of the assignee for the right of the assignor would materially change the duty of the obligor, or materially increase the burden or risk imposed on him by his contract, or materially impair his chance of obtaining return performance, or materially reduce its value to him..."

A "material increase" in the burden of risk imposed depends on the nature

7

of the contract and on the circumstances. See Comment (d) to § 317(2). In this case the purported assignment of the right to purchase the Condo from Bilanzich to Jones materially increased the risk to Nelson and materially impaired her chance of obtaining return performance from Bilanzich, i.e. the continued right to operate BACC stores in Montana. Shortly after the purported assignment Bilanzich in fact wrote a letter, (P5) wherein he advised that any rights to operated BACC stores in Montana had been terminated. This occurred approximately 7 1/2 years before the completion of the 10 year period originally contemplated and well before any performance, i.e. transfer of title was due from Nelson.

**IV.  There was no oral modification of the alleged Agreement of Sale.**

The circumstances of this case, the attempted assignment of an executory bilateral contract where the assignor's performance follows that of other party to the original contract, has been said by Professor Corbin to be more appropriately called a "novation" rather than an assignment. An attempt by one party to a contract to force a novation on the other party will excuse the latter's performance. Corbin, Contracts § 74:37 pg 466. This is especially true in the instant case where Nelson's performance could be compelled prior to the completion of Bilanzich's performance leaving Nelson in the circumstance of having no responsible person answerable if counter-performance was not made. In this case only Bilanzich was

capable of counter-performance, the continuation of the rights to operate BACC store for the remained of the 10 years and the giving of credits for the purchase of BACC logo products. This duty could not be delegated to Jones.

Did Nelson's acceptance of monthly payments from Jones for his use of the Condo result in an oral modification of the original contract? The answer to this question must be in the negative. Bilanzich gave Jones possession of the Condo in June of 1998. Jones thereafter began making the monthly payments to Nelson. Nelson testified that she considered these monthly payment to be for the continued use of the Condo. She was unaware that Jones' claimed that any right to purchase the Condo had been assigned to him. The assignment of those rights from Bilanzich to Jones was signed by Bilanzich in Jones office, according to Jones, in January of 1999. By January of 1999, the date of the purported assignment, Bilanzich was in breach of his obligation to give credits for coffee and other BACC logo merchandise and was some 5 or 6 months behind in the monthly payments he was to make. Nelson accepted the monthly payments from Jones as he had the use of the Condo. She did not waive any rights regarding the past due amounts owed by Bilanzich for his use of the Condo nor did she waive any claims to the coffee and merchandise credits Bilanzich promised but did not in fact honor and which were to form a part of the consideration for the purchase of the Condo

should Bilanzich elect to purchase. As far as Nelson knew, Bilanzich had never indicated a willingness to go forward with his purchase of the Condo and the payments being made by Bilanzich and subsequently Jones were in the nature of rent payments made for the use of the Condo. Nelson could not have agreed to a modification of a contract which she did not believe existed.

In summary, the evidenced clearly showed that any agreement regarding the Condo was contingent upon many factors, not the least of which was how much would Bilanzich have to pay up front for the purchase. This fact depended upon what the Burgetts would agree to regarding the "due on sales" clauses. Nelson would not agree to sell the Condo unless the agreement provided for the payment of her underlying mortgage when due. Even if there was an agreement, that agreement is clearly unenforceable for failure of conditions precedent and of consideration. Moreover the purported assignment of any agreement to Jones was invalid and unenforceable by Jones against Nelson. Judgement should be entered in favor of Nelson and against Jones on his counterclaims.

DATED:   Honolulu, Hawaii, August 20, 2007.

_____
ENVER W. PAINTER, JR.
Attorney for Plaintiff/Counterclaim
Defendant CAROL J. NELSON

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| CAROL J. NELSON,<br>　　　　Plaintiff,<br>vs.<br><br>ROBERT ALAN JONES<br>　　　　Defendant.<br>_____<br><br>ROBERT ALAN JONES<br>　　　　Counterclaimant,<br>vs.<br><br>CAROL NELSON<br>　　　　Counterclaim Defendant<br>_____ | ) CV 01-00182 KSC<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

CERTIFICATE OF SERVICE

I hereby certify that on below date a true and correct copy of the foregoing was duly served upon the following individuals by hand delivery at the following address:

        ROBERT E. CHAPMAN
        MARY MARTIN
        700 Bishop Street, Suite 2100
        Honolulu, Hawaii 96813

    DATED:   Honolulu, Hawaii, August 20, 2007

                                      ENVER W. PAINTER, JR.
                                      Attorney for Plaintiff/Counterclaim
                                      Defendant   CAROL J. NELSON